KINGFIELD WOOD PRODUCTS, INC.

v.

**Thomas HAGAN et al.**

**No. 2002–345–Appeal.**

Supreme Court of Rhode Island.

July 1, 2003.

Marc D. Wallick, Esq., Warwick, for Plaintiff.

John T. Walsh, Jr., Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on May 6, 2003, pursuant to an order directing all parties to appear and show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and considering the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The plaintiff, Kingfield Wood Products, Inc. (Kingfield or plaintiff), is seeking payment of $79,180.92, plus interest and costs, against the defendants, Thomas Hagan (Hagan) and John Teeden, a/k/a Jack Teeden (Teeden and collectively defendants), in their individual capacity, on a book account for goods sold and delivered to Dorette Co., also known and referred to as Dorette, Inc. (Dorette). A justice of the Superior Court entered summary judgment against both defendants for the full amount of the book account. They now appeal.

Dorette was in the business of producing customized taphandles for dispensing draft beer, and Kingfield, a Maine corporation, was the source of its wood supply. The evidence disclosed that the current indebtedness was incurred by Dorette between September 2000 and April 2001. After its demands for payment were unsatisfied, Kingfield filed suit in Superior Court. Based upon its discovery that Dorette's corporate charter and been revoked by the Rhode Island Secretary of State, Kingfield looked to Hagan and Teeden personally for satisfaction of Dorette's outstanding indebtedness. The record disclosed that Dorette's corporate charter had been revoked in 1989 and had not been reinstated.[1] Accordingly, Kingfield looked to impose liability on the individual defendants for the debt of a nonexistent corporate entity.

By his own admission, Hagan was Dorette's president, secretary, and treasurer and its sole shareholder. Teeden's position within Dorette's business structure is a hotly contested issue. Both Hagan and Teeden contend that since his initial start with the company in 1986, Teeden worked as a salaried employee with no managerial

---

1. The only similar company on record was a second corporation, Dorette Technology, Inc., incorporated in 1996 and revoked in 1997; this corporation is irrelevant to the issues on appeal.

responsibilities or ownership interest in Dorette. Teeden contends that as a mere employee, he bears no personal liability for the debt incurred by his corporate employer.[2] However, the evidence also disclosed that Teeden held himself out as vice president of Dorette, both in his dealings with Kingfield and on his business cards.

In his defense to personal liability, Hagan contended that Dorette was a fictitious trade name of his Massachusetts corporation, Ben Braddock Co., Inc. (Braddock), which purchased Dorette in 1986. According to Hagan, he should be protected from personal liability for Dorette's debts because at all relevant times Braddock was a corporation in good standing in the Commonwealth of Massachusetts. However, Braddock's certificate to do business in Rhode Island was revoked in 1989, reinstated later that year, and again revoked in 1997. When Kingfield contracted with defendants in 2000 and 2001, Braddock was not authorized to do business in this state, although its certificate was reinstated on March 21, 2001. Furthermore, Braddock has never registered Dorette as a fictitious trade name.[3] The record supports Kingfield's claim that at no time was it aware of Braddock or its alleged affiliation with Dorette. All purchase orders and billing statements between the parties referred solely to Dorette, and Braddock played no role in the parties' business dealings.

Upon commencement of suit, defendants filed a motion to dismiss, or in the alternative, a motion for summary judgment based upon their contention that they were not the proper parties. The hearing justice concluded that the revocation of Dorette's corporate charter exposed defendants to personal liability and that Hagan and Teeden were properly named as defendants. The hearing justice denied the defendants' motions for summary judgment.

Thereafter, Kingfield's motion for summary judgment was granted and Teeden's cross-motion for summary judgment was denied; the defendants were declared personally liable for Dorette's indebtedness and ordered to pay plaintiff $79,180.92, plus interest and costs. The hearing justice reasoned that since no corporate entity existed at the time the debt was incurred and because the evidence failed to connect Braddock to Dorette in any meaningful way, defendants were acting individually in their business dealings with Kingfield.

The trial justice also rejected Teeden's contention that he was a mere employee of Dorette. Rather, the trial justice determined that Teeden, as "vice president" of Dorette, was a party to the business transactions. Moreover, plaintiff produced a document setting forth a payment schedule from Dorette to Kingfield that was signed by both Hagan and Teeden.[4] The defendants filed separate notices of appeal.

Before this Court, Hagan again argues that Dorette was a fictitious trade name of Braddock, a Massachusetts corporation in

---

2. Teeden worked for "Dorette, Inc." before Hagan acquired the business; according to defendants, Teeden remained a salesman before and after Dorette changed hands.

3. The only discernable connection between Braddock and Dorette are Braddock's use of Dorette's Pawtucket, Rhode Island, address as its corporate headquarters in its annual corporation report filed with the Commonwealth

of Massachusetts, and weekly paychecks to Teeden marked as issued by "Ben Braddock d/b/a Dorette Co."

4. Teeden's subsequent motion for reconsideration in which he again asserted that he was a mere employee of Braddock and could not be held personally liable for Dorette's corporate debts also was denied.

good standing, and that he therefore cannot be held personally liable for its unpaid corporate debts. He urges this Court to recognize that the mere failure to register a trade name does not invalidate reliance on the corporate form, nor does it impose individual liability on an officer of the corporation. Hagan alleges that Dorette was not registered as Braddock's trade name because of an error by his former counsel, and that he was under the erroneous belief that its name had been registered. Although conceding that Kingfield was unaware that Dorette was a fictitious trade name for Braddock, Hagan argues that as the sole shareholder, director and officer, he should not have been made personally liable for corporate debt simply because the correct name of the corporation, Braddock, had not been disclosed to its creditors. Finally, Hagan reiterates that at no time was Teeden anything other than a disinterested employee.

Teeden argues that summary judgment was granted inappropriately because there remain legitimate issues of material fact with respect to his status, namely, whether he was an employee or principal of Dorette or Braddock, and whether he may be subject to personal liability for his activities as an employee. He assigns error to the hearing justice's reliance on evidence that his name was attached to a schedule for debt repayment to Kingfield.

## Standard of Review

■ We review the grant of summary judgment on a *de novo* basis and are therefore bound by the same rules and standards as those employed by the trial justice. *M & B Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001). "To oppose a motion for summary judgment successfully, a party need only provide the trial justice with evidence that, when viewed in the light most favorable to that party, establishes the existence of a genuine issue of a material fact." *Ferro v. Volkswagen of America, Inc.*, 588 A.2d 1047, 1049 (R.I. 1991) (citing Super.R.Civ.P. 56 and *Peoples Trust Co. v. Searles*, 486 A.2d 619, 620 (R.I.1985)).

## Background

■ This Court previously has recognized that individuals who enter into contracts on behalf of non-existent corporate entities are personally liable for the debt that is incurred. In *DBA/Delaware Systems Corp. v. Greenfield*, 636 A.2d 1318 (R.I.1994) (per curiam), summary judgment for the plaintiff on a promissory note that was executed by the defendants on behalf of a nonexistent corporation was upheld by this Court. Based on the undisputed fact that no such corporation existed at the time of the execution of the promissory note, and based on our determination that G.L.1956 § 7-1.1-136[5] precluded the defense of a *de facto* corporation, the defendants were held personally liable for the indebtedness they incurred. *Greenfield*, 636 A.2d at 1319. This rationale also has been applied to cases in which the charter of a one-time legitimate corporation has been revoked. Unlike the orderly dissolution of a corporation in which the principals are shielded from personal liability for actions taken during the winding up period, *see* H. Norman Knickle, *Terminating a Rhode Island Corporation and Avoiding Personal Liability*, 47 R.I. Bar J. 7, 30 (1998), when a corporation's charter has been revoked, the principals of that

---

5. General Laws 1956 § 7-1.1-136 provides as follows: "**Unauthorized assumption of corporate powers.**—All persons who assume to act as a corporation without authority so to do are jointly and severally liable for all debts and liabilities incurred or arising as a result of that action."

corporation are exposed to liability and enter into contracts at their peril. *See Pepin v. Donovan,* 581 A.2d 717, 717 (R.I. 1990) (per curiam) (principal officer of a corporation who continued to do business under the corporate name after the corporation's charter was revoked was personally liable for automobile excise taxes owed to the city of Warwick). In *Harris v. Turchetta,* 622 A.2d 487 (R.I.1993), creditors were awarded judgment for back rent against the individual principals who continued to conduct corporate business after the charter had been revoked. This Court rejected the defendants' argument that the business was a *de facto* corporation and that the corporate shield should insulate them from liability. *Id.* at 489.

■ Further, officers and directors who operate a corporation during the interval between reinstatement and revocation of a corporate charter are not relieved from individual liability for any debts that are incurred; efforts at reinstatement have no bearing on liability for indebtedness occurring during the period of revocation. *Harris,* 622 A.2d at 489. In this instance, a broad spectrum of creditors is protected, including private creditors and municipalities seeking payment for delinquent taxes. In *Pepin,* 581 A.2d at 718, we held that to discourage fraud and abuse, the retroactive reinstatement of a corporate charter does not provide relief from personal liability to individuals for acts occurring during the period of revocation.

Clearly, the revocation of a corporate charter has potentially grave implications for those who continue to operate the business. Financial obligations that are incurred during this period are not to be entered into lightly, for the law will protect the party victimized by these activities and will impose individual liability on those responsible for the debts.

## Fictitious Trade Name

As noted, Hagan contends that he is not personally liable for Dorette's corporate debt because Dorette was operating as a fictitious trade name at the time Kingfield contracted with it. Hagan also owned Braddock, a Massachusetts corporation that was in good standing at the time of the sale. The plaintiff responds that it would be inequitable to permit Braddock to serve as a corporate shield against the personal liability of the defendants because Braddock also is insolvent and Kingfield was unaware of its existence until defendants responded to this litigation. Further, Kingfield argues that defendants were unable to produce any documentation relative to Braddock's relationship with Dorette.

Kingfield also contends that even if Dorette were found to be a fictitious trade name for Braddock, notwithstanding its failure to register the trade name, Braddock had lost its right to conduct business in Rhode Island. Consequently, Kingfield argues, neither Braddock nor Dorette were corporations in the eyes of the state at the time the goods were sold, and defendants therefore acted in their individual capacities and are personally liable for the debts.

■ We are of the opinion that no factual issues exist with respect to Hagan's admitted status as principal, officer and sole shareholder of Dorette. It is evident that Dorette's corporate charter had been revoked during the time in which Kingfield contracted with Dorette. Therefore, the finding that Hagan was held personally liable to Kingfield for the debts that he incurred was proper.

■ Nor are we persuaded that Braddock has any relevance to this case. Hagan has failed to demonstrate that Dorette was in any cognizable way affiliated

with, or owned by Braddock or that Dorette served as Braddock's fictitious trade name. The party opposing summary judgment has the burden of producing "competent evidence [of] the existence of a disputed material issue of fact * * * and cannot rely upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions." *Star–Shadow Productions, Inc. v. Super 8 Sync Sound System,* 730 A.2d 1081, 1083 (R.I.1999) (per curiam) (quoting *Hale v. Marshall Contractors, Inc.,* 667 A.2d 1252, 1254 (R.I.1995)). In the case before the Court, no evidence has been brought forth to demonstrate that Dorette was in any way a fictitious trade name for Braddock. Significantly, at no time during the dealings between the parties was Kingfield alerted to this alleged corporate identity. We are satisfied that even if defendants genuinely intended Dorette to operate as a fictitious trade name, the failure to comply with the provisions of § 7–1.1–7.1[6] and record the fictitious business name is fatal to Hagan's argument. Additionally, we conclude that Hagan has presented insufficient evidence of the existence of the Dorette–Braddock corporate relationship to warrant an inquiry into whether any common-law trade name exists. *See National Lumber & Building Materials Co. v. Langevin,* 798 A.2d 429, 433n.3 (R.I.2002) (per curiam) (corporation that had registered a trade name and used it continuously can maintain an infringement action at common law).

Furthermore, the evidence disclosed that Braddock was not legally entitled to transact business in Rhode Island because its certificate had been revoked. Thus, it follows that an alter-ego entity acting in Braddock's stead also was barred from operating in Rhode Island. To hold otherwise would result in the absurd circumstance of unauthorized foreign corporations continuing business within the state under fictitious trade names. This result would nullify the intended purpose of regulating corporate business to protect creditors and consumers alike. Braddock appears to have been raised as a last ditch effort to avoid individual liability; its affiliation with Dorette became relevant only after Kingfield moved for summary judgment. The reality is that Kingfield delivered goods while neither Braddock nor Dorette were authorized to do business in the state and, hence, Kingfield is legally entitled to look to Hagan for satisfaction of the outstanding invoices. Hagan's appeal is denied and dismissed.

### Teeden's Employment Status

■ In contrast with Hagan, who did not contest the assertion that he was both a principal and officer of Dorette and Braddock, Teeden flatly denies that he had any role other than that of salaried employee for "Braddock d/b/a Dorette Co." To support its argument that Teeden was part owner and officer for Dorette, plaintiff argues that it relied on the representations made at the time of the sale that Teeden was as an officer for Dorette and that Dorette was a viable corporation. Additionally, Kingfield refers to an article in the Providence Journal that referred to Teeden as "vice president and chief executive officer" and "co-owner."[7]

6. Section 7–1.1–7.1(a) provides:
   "**Fictitious business name.**—(a) Any corporation organized and existing under the laws of any state or territory of the United States may transact business in this state under a fictitious name, provided that it files a fictitious business name statement in accordance with this section prior to the time it commences to transact the business under the fictitious name."

7. Although this evidence further clouds the question of Teeden's position within Dorette, it is neither persuasive nor dispositive of the

The question of individual liability for the business dealings of a revoked corporation depends on the status of the employee. His or her title in the organization and position within the corporate structure are relevant considerations. Similarly, the level of decision-making and control of the business also are important. In *Harris,* 622 A.2d at 490, the wife of the owner of a corporation that ceased to exist was held to be personally liable for corporate debt based upon her participation in managing the enterprise. The wife held the office of vice president and treasurer and testified that she worked on the restaurant's books. Consequently, she was found to be a principal of the business. In light of *Harris,* the test for individual liability is the level of responsibility with respect to the affairs of the business and whether this service was of sufficient significance to characterize that person as a principal of the corporation. This determination is fact-driven, although no one factor is dispositive. It requires an evaluation of the title held by the person and his or her behavior with respect to the affairs of the business.

Our careful review of the record on appeal has convinced us that Teeden has demonstrated that a genuine issue of material fact exists about his relationship with Dorette and the role he assumed throughout Kingfield's business dealings with Dorette. Resolution of this question is necessary for the fact-finder. Although the evidence established that Teeden held himself out as vice president of Dorette, the level of responsibility and authority he assumed within the company has not been proven. We cannot assume on the face of the record that Teeden's conduct rendered him a principal of the corporation; to support an inference that he was a principal

his activities must be substantial and of a sufficient duration. "The duty of a Superior Court justice in passing upon a motion for summary judgment is issue finding rather than issue resolution." *General Motors Acceptance Corp. v. Johnson,* 746 A.2d 122, 124 (R.I.2000) (per curiam). Based on the record before us, we conclude that the hearing justice erred in holding that Teeden was a principal of the corporation such that he was personally responsible for its debt. Accordingly, Teeden's appeal is sustained.

Based on the foregoing, the judgment of the Superior Court is affirmed in part and vacated in part. The appeal of the defendant Hagan is denied and dismissed and the judgment against him is affirmed. The defendant Teeden's appeal is sustained and the judgment against him is vacated. This case is remanded to the Superior Court for further proceedings in accordance with this opinion.

Justice FLAHERTY did not participate.

---

issue; the nature of the "evidence" and the inability to verify the source of the statement

contained in the newspaper significantly weaken its probative value.