GENERAL ACCIDENT INSURANCE
COMPANY OF AMERICA

v.

Richard R. OLIVIER et al.

No. 89-3-Appeal.

Supreme Court of Rhode Island.

May 23, 1990.

Frank J. Manni, John A. Baglini, Higgins & Slattery, Providence, for plaintiff.

Arlene M. Violet, Barrington, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendants from a declaratory judgment entered in the Superior Court denying coverage under the uninsured-motorist provisions and medical-payment provisions of an insurance policy. We reverse. The facts of the case as agreed by the parties are as follows.

"AGREED STATEMENT OF FACTS

"1. Plaintiff, on or about, October 10, 1982, issued and delivered to Susan E. Olivier, of 152 Carlson Drive, in Cumberland, Rhode Island, its Personal Auto Policy, bearing No. RPA45-356-59, with effective dates from October 10, 1982 to April 10, 1983.

"2. Said policy contains an uninsured motorist coverage section designated Part C, as well as a medical payments coverage section designated Part B.

"3. Defendants have asserted a demand for arbitration under the uninsured motorist coverage for the wrongful death of the insured, Susan Olivier, and also presented a demand for payment to recover funeral expenses under the medical payments coverage.

"4. Plaintiff, General Accident Insurance Company of America, asserted that the policy did not afford uninsured motorist coverage for either claim and filed this complaint for declaratory judgment and obtained a stay of the arbitration proceeding pending resolution of the issue of coverage.

"5. On or about November 7, 1982, Susan E. Olivier was a passenger in a motor vehicle owned and operated by Mark E. Sawaia, which was in collision with a motor vehicle operated by Richard W. Morin on Diamond Hill Road in Cumberland, Rhode Island.

"6. Subsequent to said accident, while the said Susan E. Olivier was present and while the accident was under investigation by members of the Cumberland Police Department, the said Richard W. Morin shot and killed the said Susan E. Olivier.

"7. Richard W. Morin's negligent operation of his motor vehicle was the proximate cause of the accident when he struck a vehicle in which the insured, Susan E. Olivier, was a passenger. Mr. Morin's vehicle was uninsured on the date of the accident.

"8. At the time Susan E. Olivier was shot and killed, she was not physically present in any motor vehicle, but was about 117 feet away from Mark Sawaia's vehicle in which she had been a passenger, and at the time she was shot, she was near the left rear wheel of Police Car 433.

"9. Cumberland Police Officer Joseph James, asked decedent, Susan E. Olivier, and Mark Sawaia to sit in Police Vehicle 433 where it was warm and to stay there until someone would come and talk to them, as the police intended to speak with them regarding the automobile accident, and in walking to Police Car 433, the insured, Susan E. Olivier, and Mark Sawaia walked from a point just south of the Morin vehicle, continuing about 15 feet past the rear of the Morin vehicle to get to Police Car 433.

"10. Officer Joseph James left them to go and retrieve Mr. Sawaia's registration and Susan E. Olivier's pocketbook from Sawaia's vehicle.

"11. The Sawaia vehicle was located at all times after the accident ½ on and ½ off the sidewalk in front of 1320 Diamond Hill Road facing south about 103 feet south of the Morin vehicle.

"12. The defendants are the duly appointed Co–Administrators of the Estate of Susan E. Olivier, having been appointed by the Cumberland Probate Court."

In support of their appeal, defendants, the co-administrators, argue that there is a sufficient nexus between the automobile accident clearly caused by the negligence of Richard W. Morin and the death of the decedent to warrant coverage under the policy conditions. We shall divide this contention into its component parts.

## I Occupancy

The plaintiff insurer claims, and the trial justice held, that coverage under this policy must be denied as a result of the fact that at the time defendants' decedent was shot, she was not an occupant of her motor vehicle. The facts indicate that plaintiff had left the motor vehicle in order to furnish information to a police officer and was located approximately 117 feet away from the vehicle in which she had been a passenger. In determining whether the decedent came within the term "occupying," we are persuaded by the analysis of the Pennsylvania Supreme Court contained in *Utica Mutual Insurance Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). In that case the court found that a motorist who had been involved in an accident with another party was struck by another vehicle while he stood by a police car providing information relating to his driver's license and owner's card. The driver of the vehicle causing the accident was uninsured. The Pennsylvania Supreme Court set forth criteria under which a motorist using an insured vehicle would be considered to be "occupying" that vehicle within the meaning of the policy.

"(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

"(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

"(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

"(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." 504 Pa. at 336, 473 A.2d at 1009.

In applying the facts of the case to the foregoing criteria, the Supreme Court of Pennsylvania observed:

"At all times the decedent was engaged in transactions essential to his continued use of the vehicle, and it was only be-

cause of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. Finally, it was the use of the vehicle which precipitated the whole unfortunate series of events." *Id.*

In the case at bar, the holding of the Pennsylvania Supreme Court would be most applicable. The decedent here was a passenger in an insured motor vehicle when the accident occurred. She was requested to leave that motor vehicle by a Cumberland police officer and sit in his police vehicle until they were interviewed concerning the facts relating to the accident. As in *Contrisciane* this transaction was related to her occupancy of the insured motor vehicle. She was certainly vehicle oriented at the time the fatal shot was fired. It was her status as a passenger in the insured vehicle that precipitated the whole unfortunate series of events. Consequently we are of the opinion that at the time the decedent was shot she came within the definition of "covered person" as a passenger occupying a covered automobile.

## II  Accident

█ Under the terms of the policy of insurance relating to uninsured-motorists' coverage, it was necessary that the injury be "caused by an accident." The plaintiff argues and many courts have agreed that an intentional injury would not come within the definition of "accident." This precise question was carefully considered by the Supreme Court of Florida in *Government Employees Insurance Co. v. Novak*, 453 So.2d 1116 (Fla.1984).

In that case the personal representative of a deceased motorist sought compensation for his daughter's death from her uninsured-motorist carrier. The decedent had been shot by a deranged person who had asked her for a ride. The insurance carrier denied coverage partly on the ground that this injury was willful rather than accidental. The court held that viewed from the perspective of the decedent, the occurrence was a most unexpected and unfortunate accident. The court noted the definition of accident as "an unusual, fortuitous, unex-

pected, unforeseen, or unlooked for event, happening, or occurrence * * * ." *Id.* at 1118 (quoting Black's Law Dictionary 30 (rev. 4th ed.1968)). The court also relied in part upon the mental illness of the person who had fired the fatal shot. We do not believe that this latter element was essential to the court's determination. It is, of course, most significant that viewed from the perspective of the decedent in the case at bar, the shooting by Richard Morin as he was being held by the Cumberland police was certainly an unusual, unexpected and unforeseen occurrence. We therefore conclude that the decedent's death, from her perspective, was caused by an accident.

## III  Nexus between Occupancy of Automobile and Decedent's Injury

The policy provision for uninsured-motorist coverage does require that the injury "must arise out of the ownership, maintenance or use of the *uninsured motor vehicle.*" In *Novak* the Supreme Court of Florida construed this phrase as not meaning "proximately caused by" but as having a broader meaning that simply required some nexus between the motor vehicle and the injury. The court further suggested that there had been a wholly sufficient connection between the decedent's use of the motor vehicle and the event causing her fatal injury. The court went on to say that it was unnecessary that the automobile be the instrumentality of the injury; neither would the type of conduct that causes the injury of necessity be foreseeably identifiable with the normal use of the vehicle. In substance the majority opinion enunciated the principle that the clause "arising out of the use of the motor vehicle" is framed in general, comprehensive terms in order to express the intent to effect broad coverage. Such terms should be construed liberally because their function is to extend coverage broadly. *Valdes v. Smalley*, 303 So.2d 342 (Fla.Dist.Ct.App.1974).

Similarly we believe that there was a substantial nexus in the case at bar between the decedent's status as a passenger in the insured motor vehicle and her being attacked with a dangerous weapon by an

enraged motorist while she was waiting to be interviewed concerning the circumstances of an accident.

Other Florida courts have come to similar conclusions when dealing with violent acts on the part of uninsured motorists that caused injury to covered persons. *See Halpin v. Hilderbrand*, 493 So.2d 75 (Fla. Dist.Ct.App.1986) (battery by uninsured motorist after the insured had inadvertently "cut off" his vehicle); *Fortune Insurance Co. v. Ferreiro*, 458 So.2d 834 (Fla. Dist.Ct.App.1984) (covered passenger injured by gunshot wound inflicted by uninsured motorist).

We are aware that other courts in various jurisdictions have come to contrary conclusions. We have considered these cases and find them less persuasive than the Florida opinion. *See, e.g., Rustin v. State Farm Mutual Insurance Co.*, 254 Ga. 494, 330 S.E.2d 356 (1985); *Foss v. Cignarella*, 196 N.J. Super. 378, 482 A.2d 954 (1984); *Day v. State Farm Mutual Insurance Co.*, 261 Pa.Super. 216, 396 A.2d 3 (1978). Essentially we conclude that the breadth of the language that defines coverage in the uninsured-motorist section of the policy under the liberal interpretation that should be given to effectuate such definition requires us to hold that this tragic accident arose out of the use by the operator of the uninsured-motorist vehicle. Nothing contained in this opinion should be construed to prevent an insurance company from limiting its liability by appropriate exclusionary language so long as such language does not violate statutory policy.

The reasoning in respect to the uninsured-motorist claim would apply as well to the medical-payments section of the policy. The decedent's death was caused by an "accident" as that term is construed herein, while she was constructively occupying a covered motor vehicle as a passenger. The decedent was, therefore, a covered person as defined in Part B of the policy.

For the reasons stated, the defendants' appeal is sustained and the declaratory judgment entered in favor of the plaintiff is reversed. The case may be remanded to the Superior Court with directions to enter judgment requiring the plaintiff to proceed to arbitration pursuant to the requirements of the policy.