[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (MOTION NO. 110)
This case arises out of an incident that occurred on or about June 5, 1998, in Bridgeport. The plaintiff, Pablo Padillo, had been operating his vehicle then insured by the defendant insurer, which policy provided uninsured benefits. Padillo claims an unidentified driver had been following his vehicle for some time and that that unidentified driver shot him in the leg after Padillo had pulled his vehicle to the side of a public street, opened his door, and had begun to exit the car. The uninsured driver then left the scene. The plaintiff was injured in the left leg and hip. He brought this action under the uninsured provisions of the referenced automobile policy. Padillo's carrier has moved for summary judgment stating there is no genuine issue of material fact. It asserts Padillo's injuries were not the result of an "accident" and there is thus no available uninsured motorist coverage. The plaintiff has filed a timely objection. Both parties submitted memoranda of law and this court heard oral argument on February 19, 2002.
The uninsured motorist provisions of the insurance contract obligates the defendant, in consideration for premiums paid, to pay "those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto . . . because of bodily injures sustained by an insured person." Insurance contract, Part 5, p. 11. It continues, "Bodily injury must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto. . . ." Id. The policy was in full force and effect at the time of the incident. An uninsured auto is "a hit and run motor vehicle which causes bodily injury to an insured person with or without physical contact with the insured person or with a vehicle occupied by that person." Insurance contract, Part 5, Definition 3, p. 14. The defendant argues that definition CT Page 7876 mandates it be the "vehicle" that causes the bodily injury; it concedes, however, an intentional act may sometimes be an "accident" for the purposes of an insurance policy. See Imperial Casualty Indemnity Co. v.State, 246 Conn. 313 (1998). It further concedes decisional law supports the view the term "accident" is best viewed from the insured's perspective. See Mills v. Colonial Penn. Ins. Co., 47 Conn. Sup. 17, 21
(2000).
The defendant argues the consistent use of the word "accident" rules out coverage for this act which was, it states, intentional and not a surprise or an "unforeseen unplanned event or condition" as "accident" is defined by Webster's Third New International Dictionary 11 (1971). Accord Black's Law Dictionary (7th Ed. 1999). It argues proof that the plaintiff expected and feared a happening is that he knew he was being followed by a suspicious vehicle, altered his travel route in the hope of losing that vehicle and/or placing himself in a safer environment, and "invited" the shooting by starting to leave the vehicle to confront the other driver though he had not fully exited the car when the alleged injury occurred. The plaintiff points to the failure of the policy to define the term "accident" and asserts further that this incident arose out of the ownership, maintenance, or use of an uninsured auto. Part 5 of the subject policy reads in pertinent part:
 We will pay those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured auto because of bodily injury sustained by an insured person. Bodily injury must be caused by an accident and arise out of the ownership, maintenance, or use of an insured or underinsured auto.
The plaintiff urges the analysis of the court in Mills v. Colonial PennInsurance Company, 47 Conn. Sup. 17, (judicial district of New Haven, Blue, J., October 17, 2000). There, the plaintiff was stopped at a light when another car "suddenly and without warning entered into the intersection in the Opposite lane and discharged gunshots" which injured her forearm and abdomen. Id. at 18. That policy, as in this case, contained the requirements that the bodily injury be caused by an accident and that it arise out of the ownership, maintenance, or use of the uninsured motor vehicle. As in this case, the Mills policy did not define the terms "accident" or "auto accident." In neither case is there a question that the plaintiff was an "insured" or had sustained "bodily injury." The Mills court began its analysis by considering whether the shooting there constituted an "accident" and concluded that, viewing the events from the victim's perspective,[1] the shooting was both unforeseen and unexpected — thus, an "accident." Adopting the CT Page 7877 reasoning advanced in other cases, the court in Mills distinguished between liability coverage which protects the insured from the consequences of his/her own acts and does not extend to the insured's intentional wrongdoing and uninsured motorist coverage which protects the insured from harm caused by others.
In the case before the court, the shooting may well be intentional when viewed from the tortfeasor's perspective. Though the defendant argues the plaintiff's conduct in bringing his car to a stop and in attempting to exit the vehicle was confrontative with which this court agrees, it cannot be concluded the plaintiff expected that, by so doing, he would be physically injured (as opposed to being verbally assaulted) much less be shot. For sure the tortfeasor's conduct was bizarre but this court cannot conclude that fact alone should have produced in the plaintiff an expectation of physical injury; more likely, the plaintiff anticipated that his own conduct would either satisfy the tortfeasor that the tortfeasor was following the wrong person or, worst case, that there would be an exchange of words. In the absence of policy language which prohibits the court's adoption of this view, the requirement of "accident" is here satisfied.
The defendant's argument that there is no coverage because the policy defines an "uninsured auto" as a hit and run motor vehicle which "causes injury to an insured person" and because the tortfeasor's operation of his vehicle did not cause the accident is also not persuasive. As theMills court concluded, the argument that coverage would not be available to the tortfeasor had he liability insurance because of the intentional act of shooting begs the question since that would invoke uninsured motorist coverage in the same way such coverage is involved in, for example, the case of an insured tortfeasor who flees the scene of an accident under circumstances preventing identification. Such an argument also ignores that the policy does not require there be physical contact between the tortfeasor's vehicle and the insured's vehicle or between the tortfeasor's vehicle and an occupant of the insured's vehicle. While the policy requires that the tortfeasor's vehicle "cause" the accident, there can be more than one legal cause and, thus, the necessity of grappling with the question whether this happening arose out of the "ownership, maintenance, or use of the uninsured motor vehicle." Part 5, p. 11.
Our Supreme Court, in Hogle v. Hogle, 167 Conn. 572 (1975), has expansively interpreted "use." It has said that, for the purpose of determining coverage under the appropriate provisions of a liability insurance policy, "it is sufficient to show only that the accident or injury `was connected with', `had its origins in', `grew out of', `flowed from', or `was incident to' the use of the automobile in order to meet the requirement that there be a causal relationship between the accident CT Page 7878 or injury and the use of the automobile." Id., at 577. It concluded it is sufficient if the "use" of the car "was connected with the accident or the creation of a condition that caused the accident." Id., at 578. The Court, in Hogle, determined that requirement was satisfied though that which it was alleged caused the driver to crash the car into a tree was not that driver's negligent operation but the fact that the family dog had jumped from the rear seat and struck the driver. The Court concluded the use of the automobile was "in some way connected with the accident which resulted in the injuries." Id. Thus, since the homeowners policy there had a clause excluding liability arising out of the use of the automobile, the Court affirmed the granting of the homeowner's carrier s motion for summary judgment. The circumstances in the case at bar are no more attenuated than in Hogle. The events which culminated in the plaintiff's shooting grew out of or flowed from his operation of the car the defendant insured. The plaintiff's use of his automobile was clearly "connected to" the shooting which caused his injury.
The policy, on the one hand, requires it be the motor vehicle that "causes" the accident. Part 5, Definition 3, p. 14. Yet, it also provides it will pay damages the insured is legally entitled to recover from an uninsured vehicle if such injury is caused by an accident and arises out of the use of an automobile. Part 5, p. 11. As above stated, from the vantage point of the insured, the shooting was accidental because it was unforeseen and unexpected. The injury arose out of the insured's use of his auto. The terms of an insurance policy "should be construed liberally because their function is to extend coverage broadly." Mills v. ColonialPenn Insurance Company, 47 Conn. Sup. 17, at 29, citing General AccidentIns. Co. of America v. Oliver, 574 A.2d 1240, 1242 (R.I. 1990). The drafters of the policy chose not to restrict policy terms so as to avoid an expansive reading and the defendant cannot now claim the benefit of that which it did not do.
The defendant's Motion for Summary Judgment is denied.
 ___________________ B.J. SHEEDY, J.