**NATIONAL REFRIGERATION, INC.**

v.

**STANDEN CONTRACTING
COMPANY, INC.,**
Alias et al.

No. 2006–318–Appeal.

Supreme Court of Rhode Island.

Feb. 21, 2008.

Michael J. McCaffrey, Warwick, for Plaintiff.

Andrew S. Ullucci, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on December 3, 2007, on appeal by the plaintiff, National Refrigeration, Inc. (plaintiff or National), from the entry of summary judgment in favor of the defendants, Standen Contracting Company, Inc. (Standen), and United States Fidelity and

Guaranty Company (USF & G and collectively defendants).[1] The plaintiff has appealed to this Court, contending that the motion justice erred in granting the defendants' motion for summary judgment because (1) a genuine issue of material fact existed at the time of the hearing; (2) the contract that is the subject of the dispute between Standen and National was ambiguous; and (3) the motion justice failed to determine whether the law of Rhode Island or that of Massachusetts governs the issues in this case. For the reasons stated in this opinion, we affirm the judgment.

## Facts and Travel[2]

In the year 2000, the Rhode Island Airport Corporation (RIAC) agreed to a contract to install sound-abatement materials in residences in the vicinity of T.F. Green Airport. RIAC selected Standen as the general contractor and, following a bidding process, Standen engaged National as a subcontractor for the project. Between 2000 and 2002, National was awarded three contracts—RIAC Contract No. 11698 (first contract); RIAC Contract No. 13670 (second contract); and RIAC Contract No. 15028 (third contract)—for heating, ventilation, and air conditioning (HVAC) work in connection with the sound-abatement project. It is the third contract that is the subject of this appeal.

Because the sound-abatement project was federally funded, subcontractors were required to compensate their employees for labor according to prevailing hourly wage rates, in compliance with the Davis–Bacon Act, 40 U.S.C. §§ 3141–3148. The first contract contained a wage decision document, but it did not list the prevailing hourly wage for HVAC related work. After requesting a pre-bid wage determination from the U.S. Department of Labor (DOL), RIAC was informed that the wage rate would be determined after bidding was completed.

The uncertainty surrounding the prevailing wage for HVAC employees caused RIAC to add a new provision to the first contract that also was included in the second contract. That new provision was set forth in "Addendum No. 1" (addendum); pursuant thereto, RIAC would consider altering the contract amount "through a Change Order for the difference (if any) for the rate used in the bid for the unlisted classification and the rate determined by the Federal Department of Labor." Significantly, "Part IIA" of the first contract specifications provided that contractors could include in their bid a wage rate for HVAC mechanics and, if the wage rate paid by the contractor was lower than the rate established by the DOL, the contractor could seek a change order for the difference.[3] Finally, bidders were required to submit a wage and certification form, listing the precise hourly wage rate and total number of hours the contractor used in compiling its final bid.

National was awarded the first contract based upon a wage rate of $15.49 per hour. The DOL later determined that the appropriate wage rate was $32.91 per hour, resulting in an increased cost to National of $39,639.27. National submitted a change

---

**1.** Standen secured a labor and material payment bond from USF & G for $1,059,924 for its work on the third contract. The record discloses that National is pursuing its claim against USF & G as surety for Standen.

**2.** The facts that are set forth in this opinion are gleaned from the parties' submissions. Because we are reviewing a grant of sum-mary judgment, many of the facts are derived from the affidavits of the parties.

**3.** In order to be eligible for a change order, the rate selected must have been within the "Rules of Thumb" parameters created by the Federal Department of Labor.

order for that amount to Standen that was forwarded to RIAC. RIAC approved the change and National was reimbursed.

Approximately one year later, in June 2001, National was awarded the second contract after basing its bid on a wage rate that was lower than the classification later determined by the DOL. Again, the appropriate amount was determined to be $32.91 per hour. National incurred an increased cost of $11,462, submitted a change order for that amount and was compensated in the same manner as under the first contract.[4] However, this practice changed for the third contract—the contract that is the subject of this appeal.[5]

On March 22, 2002, National submitted and Standen accepted a lump sum bid of $251,935 for the HVAC work to be completed on residences referred to as Group 13; it is to this work that the third contract relates. The parties entered into a subcontract on July 23, 2002, that differed from the previous two contracts in a crucial respect: it did not include the addendum authorizing a change order for any wage determination made after the contract was executed. The bid specifications notified all contractors and subcontractors that wages paid were not to be "less than those prevailing on the same type of work on similar construction in the immediate locality as determined by the United States Secretary of Labor, in accordance with the [Davis–Bacon Act]." On November 27, 2002, National submitted a change order to Standen for $35,226.14, the difference between the wage rate used to calculate its bid and the wage rate required by the DOL for HVAC mechanics. Standen forwarded the request to RIAC, which rejected the change order.

On October 31, 2003, plaintiff filed an action for breach of contract based on Standen's refusal to honor the change order request. The defendants moved for summary judgment, and a hearing on the motion was held on July 24, 2006. The motion justice noted that the previous contract documents outlined procedural steps for change order requests for increased labor costs, but that the third contract did not so provide. The hearing justice concluded that under the unambiguous terms of the third contract, plaintiff was not entitled to the wage reimbursement. She granted defendants' motion for summary judgment, and plaintiff appealed.

### Standard of Review

■ This Court's *de novo* standard for review of a motion justice's decision to grant summary judgment is well established. *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I. 1996).

■ Whether a contract's terms are ambiguous is a question of law. *Dubis v.*

---

4. The actual amount approved by RIAC was $8,606.18 because of a dispute concerning the total number of hours worked by National employees.

5. This contract is identified as Group 13.

*East Greenwich Fire District,* 754 A.2d 98, 100 (R.I.2000). However, a contract may be deemed ambiguous only if "it is reasonably and clearly susceptible of more than one interpretation." *Rotelli v. Catanzaro,* 686 A.2d 91, 94 (R.I.1996). On the other hand, it is well settled that, if there is an ambiguity, "[a]n ambiguity in a contract cannot be resolved on summary judgment." *Rubery v. The Downing Corp.,* 760 A.2d 945, 947 (R.I.2000) (quoting *Rotelli,* 686 A.2d at 95). We have long held that "[i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids." *Clark–Fitzpatrick, Inc./Franki Foundation Co. v. Gill,* 652 A.2d 440, 443 (R.I.1994) (citing *Greenwald v. Selya & Iannuccillo, Inc.,* 491 A.2d 988, 989 (R.I. 1985)).

In addition, the parol-evidence rule bars the use of any previous or contemporaneous oral statements that attempt to modify an integrated written agreement. *Riley v. St. Germain,* 723 A.2d 1120, 1122 (R.I.1999) (citing *Bourg v. Bristol Boat Co.,* 705 A.2d 969, 971 (R.I. 1998)). "We also adhere to the rule of interpretation that when considering 'whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning.'" *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.,* 852 A.2d 535, 542 (R.I.2004) (quoting *Rubery,* 760 A.2d at 947).

## Analysis

On appeal, plaintiff argues that summary judgment erroneously was granted because a genuine issue of material fact was presented and, further, that the contract manual for the third contract was ambiguous. Because the only argument developed in plaintiff's brief pertains to ambiguity, we treat the two issues as one. Accordingly, we shall review the record *de novo* to determine whether issues of fact existed, as plaintiff alleged, that would give rise to ambiguous contract terms.

In granting summary judgment, the hearing justice declared that "[t]here simply is no ambiguity in this contract. And in the absence of ambiguity, it is not the Court's responsibility to create confusion where none exists." After carefully reviewing the record before us, we discern no error in this holding. The third contract provided that the bidder was responsible for allocating the proper wage rate to its bid. The specifications provided that a bidding party was charged with "ascertaining the rates payable for [its particular employee] classifications" and that "the omission [of a wage rate classification] will not, per se, establish any liability for increased labor costs resulting from the use of such classification." Although the contract itself included an attached schedule of prevailing wage rates and wage obtainment information, neither document listed the specific classification for HVAC workers. In unequivocal terms, the contract placed the burden on National to "comply with all laws * * * bearing on the performance of the [w]ork of this [s]ubcontract." Thus, any increased costs associated with incorrect wage estimates were the responsibility of the subcontractor, National. Because this contract language is clear and unambiguous, reference to extrinsic evidence is not necessary.

Nevertheless, plaintiff argues that it was operating under an "understanding" that it could seek reimbursements for later wage adjustments similar to the practice under the previous contracts and that this "understanding" gave rise to an ambiguity. This argument is unavailing. "[I]t has long been a settled principle that 'a party

who signs an instrument manifests his assent to it and cannot later complain that he did not read the instrument or that he did not understand its contents.'" *Manchester v. Pereira,* 926 A.2d 1005, 1012 (R.I. 2007) (quoting *F.D. McKendall Lumber Co. v. Kalian,* 425 A.2d 515, 518 (R.I. 1981)). The record suggests that when National entered into the third contract, it was unaware of the change in wage classification reimbursements. Unfortunately, this fact is of no assistance in this appeal.

■ As support for a finding of ambiguity, National also points to comments by an architect for RIAC made at a pre-bid meeting, for a contract other than the third contract,[6] on April 10, 2002. At this meeting, which took place before National entered into the third contract, an architect suggested that the contractor would be permitted to set forth an estimated wage classification if an appropriate rate was not specified in the bid documents. The plaintiff avers that before entering into the third contract, National was made aware of these comments. It is unclear how this statement gives rise to an ambiguous contract term because the pre-bid meeting plaintiff describes was for a different contract and the comments were made by an agent of RIAC, not by an agent of Standen or USF & G. At best, these remarks amount to oral statements that are barred by the parol-evidence rule. *See Fleet National Bank v. 175 Post Road,*

*LLC,* 851 A.2d 267, 276 (R.I.2004) ("[T]he parol evidence rule bars the admission of any previous or contemporaneous oral statements that attempt to modify an integrated written agreement.").

■ The fundamental import of the parol-evidence rule "is that a complete written agreement merges and integrates all the pertinent negotiations made prior to or at the time of execution of the contract." *Fram Corp. v. Davis,* 121 R.I. 583, 587, 401 A.2d 1269, 1272 (1979). If a final written agreement exists, any additional declarations made before or at the time the contract was entered into are not part of the agreement. *Filippi v. Filippi,* 818 A.2d 608, 619 (R.I.2003) (citing *Fram Corp.,* 121 R.I. at 587–88, 401 A.2d at 1272). When National and Standen entered into the third contract, the only operative terms were contained within that agreement.

■ Finally, plaintiff also raised a choice-of-law argument and contends that this Court first must determine whether Rhode Island or Massachusetts law governs the issues in this case, and that the third contract is governed by Rhode Island law.[7] We note that the motion justice did not rule on this issue, but we are satisfied that this was not error because this case does not present a choice-of-law controversy and National has failed to persuade us otherwise.[8] A motion justice need not en-

6. Significantly, this pre-bid meeting was held for a Group 14 contract.

7. The third contract states that "[t]his [s]ubcontract shall be governed by the laws of the Commonwealth of Massachusetts." However, plaintiff argues that under G.L. 1956 § 6–34.1–1, which was amended in 2006, a choice-of-law provision is voidable by the party performing an improvement to real property and thus Rhode Island law is controlling. Section 6–34.1–1(a) provides:
"If a contract is principally for the construction or repair of improvements to real

property located in Rhode Island and the contract contains a provision that makes the contract or any conflict arising under it subject to the law of another state, to litigation in the courts of another state, or to arbitration in another state, that provision is voidable by the party that is obligated by the contract to perform the construction or repair."

8. At oral argument, the parties addressed the choice-of-law issue. Upon being questioned about any differences between the governing Rhode Island and Massachusetts law, counsel

974

gage in a choice-of-law analysis when no conflict-of-law issue is presented to the court. Thus, the choice-of-law provision in the contract does not disturb the summary-judgment ruling. *See Avco Corp. v. Aetna Casualty & Surety Co.,* 679 A.2d 323, 330 (R.I.1996) (holding that plaintiff's choice-of-law contention was "feckless" because the trial justice's finding would have been the same regardless of law applied); *see also General Accident Insurance Co. of America v. American National Fireproofing, Inc.,* 716 A.2d 751, 758 (R.I.1998) (affirming trial justice's decision not to reach a choice-of-law issue because the language of the contract barred recovery for the claims at issue).

### Conclusion

For the reasons stated in this opinion, we affirm the judgment in this case. The record shall be remanded to the Superior Court.

for National failed to articulate any disparity between the law of these jurisdictions.