May 5, 2017

**Supreme Court**

No. 2016-19-Appeal.
(PC 12-1793)

Jeanne Jackson, Executrix of the Estate of      :
    Anthony J. Esposito, Jr. et al.

             v.      :

Quincy Mutual Fire Insurance      :
    Company et al.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2016-19-Appeal.
(PC 12-1793)
(Concurrence and Dissent
Begin on Page 12)

Jeanne Jackson, Executrix of the Estate of   :
    Anthony J. Esposito, Jr. et al.

            v.             :

Quincy Mutual Fire Insurance       :
    Company et al.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** This case came before the Supreme Court on March 8, 2017, on appeal by the plaintiff, Jeanne Jackson (plaintiff) as Executrix of the Estate of Anthony J. Esposito, Jr. (decedent), from a grant of summary judgment in favor of the defendant, Quincy Mutual Fire Insurance Company (defendant or Quincy Mutual). For the reasons set forth herein, we vacate the judgment of the Superior Court.

## Facts and Travel

The facts of this case, which we glean from the filings of the parties, are tragic. On September 9, 2011, decedent was riding his motorcycle on Route 6 in Providence when what has been described as a green trash barrel fell from a passing truck and entered the decedent's lane of travel. The barrel collided with the motorcycle and became wedged in its front tire. The decedent lost control of the motorcycle and was ejected into the adjacent lane of travel. The decedent struck the ground, rolled into the high-speed lane, and was hit by a car traveling in that lane. He died from his injuries.

- 1 -

The motorcycle was insured with the Foremost Insurance Company, which provided limited liability insurance but did not provide uninsured motorist (UM) coverage. Although the decedent did not have UM coverage from his motorcycle policy, he also owned an automobile that was insured with Quincy Mutual. The policy with Quincy Mutual (the Quincy Mutual policy) did have UM coverage. However, there was an exclusion to the UM coverage, which is the subject of this dispute. The exclusion section (A.1.) of the Quincy Mutual policy reads as follows:

> "We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained: By an 'insured' while 'occupying', or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage under this policy."

The definitions section (G.) of the Quincy Mutual policy reads as follows: "'Occupying' means in, upon, getting in, on, out or off."

The plaintiff, as executrix of decedent's estate, brought a declaratory judgment action in Superior Court, declaring that the estate was entitled to UM coverage under the Quincy Mutual policy. Quincy Mutual moved for summary judgment, stating that the exclusion clause bars plaintiff from recovery because decedent was "occupying" his owned-but-not-insured motorcycle at the time of the fatal injury.

On September 29, 2015, a hearing was held on the motion, during which plaintiff argued that there were disputed issues of material fact as to which of the two collisions was the cause of decedent's death—the first collision with the trash barrel, which caused decedent to lose control of the motorcycle, or the second impact from the passing car. The plaintiff claimed that the timing between the two collisions was a critical factor in determining whether decedent was "occupying" the motorcycle at the time of his death as that term is defined in the Quincy Mutual policy. The motion justice acknowledged that "the coroner couldn't even tell which accident

killed [decedent], whether it was the barrel being thrown or getting hit from the car." Notwithstanding this question of fact, the motion justice, relying on this Court's holding in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990),[1] concluded that, under Olivier, decedent was occupying his motorcycle at the time of his death. Accordingly, the motion justice granted summary judgment in favor of Quincy Mutual. An order granting partial summary judgment was entered on October 16, 2015, from which plaintiff timely appealed.

## Standard of Review

"Summary judgment is 'a drastic remedy,' and a motion for summary judgment should be dealt with cautiously." Estate of Giuliano v. Giuliano, 949 A.2d 386, 390 (R.I. 2008) (quoting Ardent v. Horan, 117 R.I. 254, 256-57, 366 A.2d 162, 164 (1976)). "It is important to bear in mind that the 'purpose of the summary judgment procedure is issue finding, not issue determination.'" Id. at 391 (quoting Industrial National Bank v. Peloso, 121 R.I. 305, 307, 397

---

[1] In General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990), this Court adopted four factors set forth by the Pennsylvania Supreme Court in Utica Mutual Insurance Co. v. Contrisciane, 473 A.2d 1005 (Pa. 1984) in order to determine whether an occupant of a motor vehicle comes within the term "occupying" as defined in an insurance policy. Those factors are as follows:

> "(1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> "(2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> "(3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> "(4) the person must also be engaged in a transaction essential to the use of the vehicle at the time." Olivier, 574 A.2d at 1241 (quoting Utica Mutual Insurance Co., 473 A.2d at 1009).

A.2d 1312, 1313 (1979)); see also Steinberg v. State, 427 A.2d 338, 340 (R.I. 1981) ("[I]n ruling on a motion for summary judgment, the trial justice must look for factual issues, not determine them.").

"Summary judgment is appropriate only when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as [a] matter of law.'" Sola v. Leighton, 45 A.3d 502, 506 (R.I. 2012) (quoting Plunkett v. State, 869 A.2d 1185, 1187 (R.I. 2005)). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment?" Id. (quoting National Refrigeration, Inc. v. Standing Contracting Co., 942 A.2d 968, 971 (R.I. 2008)). "This Court reviews de novo a trial justice's decision granting summary judgment." Id. (quoting Lynch v. Spirit Rent-A-Car, Inc., 965 A.2d 417, 424 (R.I. 2009)).

## Analysis

Before this Court, plaintiff contends that summary judgment was inappropriate in this case because decedent was separated from his motorcycle "in distance, time, and place" at the time of his death and therefore, was not occupying the motorcycle as that term is defined in the Quincy Mutual policy. Specifically, plaintiff asserts that there were two separate collisions; the first of which occurred when the trash barrel became lodged in the front tire of the motorcycle and caused decedent to fall off, and the second when decedent was hit by an oncoming vehicle after landing in the high-speed lane of travel. The plaintiff seeks recovery for the injuries sustained as a result of the second collision when, according to plaintiff, decedent was no longer

an occupant of the motorcycle but was lying in the roadway after having been ejected from the motorcycle. The plaintiff submits that this distinction is critical to the determination of occupancy under the Quincy Mutual policy.

Quincy Mutual responds that the sequence of events was instantaneous and that the sequential distinction in this case is insignificant based on the causal connection between decedent's use of the motorcycle and his subsequent death. The defendant argues that the motion justice properly relied on the four prongs of Olivier, in determining occupancy, and submits that this Court should decline to depart from our holding in Olivier, in favor of plaintiff's two-collision theory. Notwithstanding this argument, defendant disputes that decedent died as a result of the second impact; rather, defendant points to deposition testimony suggesting that decedent may have died upon striking the ground after the trash barrel collided with his motorcycle.

Although this case is not the first occasion on which this Court has been called upon to interpret the term "occupying" as defined in an insurance contract, see Olivier, 574 A.2d at 1241; see also D'Antuono v. Narragansett Bay Insurance Co., 721 A.2d 834 (R.I. 1998), we have not been called upon to address the term in the context of two collisions. Nor have we had occasion to examine an automobile policy provision that is designed to exclude an owner from the protections of his policy. We look first to the pertinent terms of the Quincy Mutual policy.

Generally, when reviewing an insurance policy, "[w]e shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." Allstate Insurance Co. v. Ahlquist, 59 A.3d 95, 98 (R.I. 2013) (quoting Beacon Mutual Insurance Co. v. Spino Brothers, Inc., 11 A.3d 645, 649 (R.I. 2011)); see also General Accident Insurance Co. of America v. D'Alessandro, 671 A.2d 1233, 1235 (R.I. 1996) ("In interpreting the contractual language of an

insurance policy, '[we give] the language used in the policy * * * its plain, ordinary, and usual meaning.'" (quoting Malo v. Aetna Casualty and Surety Co., 459 A.2d 954, 956 (R.I. 1983))).

The plain language of the Quincy Mutual policy defines "occupying" as "in, upon, getting in, on, out or off." Although in Olivier, 574 A.2d at 1243, this Court accorded a broad and liberal interpretation to the term "occupying" as it related to a passenger in an insured vehicle, we recently recognized a distinction between insurance contract provisions that encompass coverage for persons other than the named insured from those policy provisions that exclude an insured from coverage protection. See Peerless Insurance Co. v. Luppe, 118 A.3d 500, 510 (R.I. 2015). Specifically, we acknowledged the "general principle favoring broad coverage" as the controlling standard. Id. (quoting Aetna Life and Casualty Co. v. Carrera, 577 A.2d 980, 983 (R.I. 1980)). The general principle was summarized as follows:

> "[W]here the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." Id. (quoting Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, Switzerland, 170 A.2d 800, 804 (N.J. 1961)).

Accordingly, the guidepost in determining whether to apply a broad and liberal view of the terms in an insurance policy or whether a strict interpretation of the language is more appropriate is whether the language relates to inclusion of persons within the policy or exclusion of the insured from protection.

Although neither party cited Peerless Insurance Co., 118 A.3d at 510, Quincy Mutual argues that decedent—the named insured under its policy—is excluded from coverage based on the policy provision defining occupancy and it relies on this Court's holding in Olivier as support

for that contention.[2] Because the owned-but-not-insured provision of the Quincy Mutual policy is a clause of exclusion designed and intended to limit the protection afforded to Quincy Mutual's insureds, a strict interpretation of the term "occupying," as defined in the Quincy Mutual policy, must be employed. See Peerless Insurance Co., 118 A.3d at 510. The pivotal question, therefore, is whether, at the time of the fatal injury, decedent was "in, upon, getting in, on, out or off" the motorcycle. A strict interpretation of the Quincy Mutual policy leaves open the overarching uncertainty of which collision caused decedent's fatal injuries. It is not disputed that at the time of the first impact, decedent was on the motorcycle and driving on the highway. The question governing this controversy, however, is whether he was "in, upon, getting in, on, out or off" the motorcycle at the time he was struck by the passing motor vehicle.

We look for guidance to our sister states that have considered the term "occupying" in this context. See Kedy v. A.W. Chesterton Co., 946 A.2d 1171, 1182 (R.I. 2008) ("When our own procedural rules and our case law are silent on a particular issue, '[i]t makes eminent good sense to consider the experience and the reasoning of the judges in other jurisdictions * * *.'" (quoting Ciunci, Inc. v. Logan, 652 A.2d 961, 962 (R.I. 1995))). In Farmers Insurance Co. of Washington v. Clure, 702 P.2d 1247 (Wash. Ct. App. 1985), the Court of Appeals of Washington considered whether an insured, who was injured as a result of striking the ground after being thrown from his motorcycle in a collision with an uninsured motorist, was "occupying" the motorcycle, and thus precluded from recovering UM benefits. Id. at 1248. The court examined the term "occupying" in the context of an exclusionary policy provision that was defined as "in, on, getting into or out of," id. at 1249, and determined that the average insured "would not

---

[2] Quincy Mutual also relies on this Court's decision in D'Antuono v. Narragansett Bay Insurance Co., 721 A.2d 834 (R.I. 1998), and argues that the cases are indistinguishable. We reject this comparison as the facts of this case are based on two impacts, and thus are separate and distinct from the one collision in D'Antuono.

reasonably conclude that the exclusion from coverage was merely dependent upon the fortuitous circumstance that a portion of his or her body remained in physical contact with the motorcycle at the precise moment of injury." Id. at 1250. Rather, the court concluded that, "in any motorcycle accident the passenger is almost certainly going to be thrown violently from the vehicle * * *." Id. (quoting Greer v. Northwestern National Insurance Co., 674 P.2d 1257, 1264 (Wash. Ct. App. 1984)). The court held that, because the insured was injured as a result of the immediate impact with the ground after being thrown from the motorcycle, he was occupying the motorcycle at the time of his injuries. Id.

Ten years later in Mid-Century Insurance Co. v. Henault, 905 P.2d 379 (Wash. 1995), the Supreme Court of Washington considered the circumstance of two collisions in deciding whether the insured was occupying her motorcycle when she was struck by an uninsured motorist as she lay in the roadway after having been ejected in an earlier collision. See id. at 381. Significantly, in Henault, the Washington Supreme Court distinguished Clure based on the fact that there were two separate collisions. Id. at 382-83. The court noted that, "[decedent] does not seek coverage for injuries sustained when she was thrown to the pavement in the first collision * * * [r]ather, she seeks coverage for injuries she sustained when she was struck by [a second vehicle] as she lay in the roadway sometime after having been ejected from her motorcycle in the first collision." Id. at 383. The Washington court held that, because "exclusionary clauses are to be construed strictly against the insurer," id. at 382, it was "reasonable to conclude that when the second impact occurred, [insured], who had been lying in the roadway for an unspecified period of time, clearly was not 'in, on, getting into, or getting out of' her motorcycle and therefore she was not 'occupying' it." Id. at 383.

Likewise, in <u>Miller v. Amica Mutual Insurance Co.</u>, 931 A.2d 1180 (N.H. 2007), the decedent was riding his motorcycle when the tire got caught in a rut in the roadway; he was ejected from the motorcycle and was fatally struck by an oncoming vehicle while lying in the road. <u>Id.</u> at 1181. The decedent's estate brought a claim to recover UM benefits under an automobile policy owned by the decedent, but was precluded from recovery based on the policy's exclusionary clause, which defined "occupying" as "in, upon, getting in, on, out or off" of a vehicle. <u>Id.</u> The court observed that, regardless of whether the issue is "framed in temporal terms or spatial terms," "a reasonable person in the position of the insured would not view someone lying in the middle of the highway forty feet from his motorcycle for a period of time between thirty seconds [and] one and a half minutes as 'in, upon, getting in, on, out or off' that motorcycle." <u>Id.</u> The court concluded that the decedent's estate was not precluded from recovery under the insurance policy because the decedent was not occupying his motorcycle at the time of his fatal injuries. <u>Id.</u> at 1186; <u>see</u> <u>also</u> <u>Swarner v. Mutual Benefit Group</u>, 72 A.3d 641, 650-51 (Pa. Super. Ct. 2013) (holding that decedent, who was ejected from her motorcycle and lying in the roadway, was no longer "occupying" the motorcycle when she was struck by a passing truck because she was no longer "on" or in the process of "[g]etting in, on, out or off" of the motorcycle).

The defendant argues that the facts before this Court differ from those of <u>Henault</u> and <u>Miller</u>, based on a temporal distinction between the two collisions, as compared to the disputed, but potentially almost simultaneous impacts in the case at bar. The defendant directs our attention to <u>Dunlap v. United States Automobile Association</u>, 470 So. 2d 98 (Fla. Dist. Ct. App. 1985) and <u>Partridge v. Southeastern Fidelity Insurance Co.</u>, 323 S.E.2d 676 (Ga. Ct. App. 1984), in support of what defendant submits is the absence of a "significant break in time" between the

two impacts. These cases are distinguishable both on their facts and the courts' utilization of an Olivier-type broad and liberal view of the term "occupying."

In Dunlap, 470 So. 2d at 99, the insured was ejected from his motorcycle and then immediately run over by a taxi. The court held that the concept of "occupying" included a motorist who is struck by a passing vehicle "immediately following" an accidental ejection from the motorcycle. Id. at 100. And, in Partridge, 323 S.E.2d at 677, the court determined that the decedent, who was struck by a vehicle while lying in the road after having been ejected from his own motor vehicle, was "occupying" his motor vehicle at the time of the injury because the decedent had not "remove[d] himself to a neutral zone" before the fatal injury. Significantly, however, both the Dunlap and Partridge courts focused on the reasoning of United States Fidelity & Guaranty Co. v. Daly, 384 So. 2d 1350 (Fla. Dist. Ct. App. 1980)—a case in which the court broadly interpreted the term "occupying" for purposes of inclusion within an insurance policy providing personal injury protection benefits. Id. at 1350-51. Because the reasoning in these cases is not the law in this state, we reject defendant's contentions.

The plain language of the Quincy Mutual policy, which we construe against the insurer, defines "occupying" as "in, upon, getting in, on, out or off." Given this language, if decedent died from the resulting impact with the roadway after the first collision with the trash barrel, or in such a circumstance that the second impact was so close in time and proximity as to be considered simultaneous, it could be found, as the court did in Clure, that he was occupying his motorcycle at the time he was fatally injured. In that case—as harrowing as the image may be— decedent was indeed "getting off" his motorcycle at the time of the fatal injury.[3] However, if, as

_____

[3] The concurring and dissenting opinion observes that the definition of "getting off" cannot possibly encompass an accidental ejection from a motorcycle because the process of "getting off" "connotes active and volitional activity." We quote Sir Isaac Newton: "What goes up must

- 10 -

plaintiff suggests, a factfinder determines that decedent died as a result of the second impact with the vehicle after landing on the ground and rolling into oncoming traffic, a strict interpretation of "occupying" would proceed in accordance with Henault and Miller. Unquestionably, if decedent was fatally injured as a result of the second impact, while he was lying in the road, he clearly was not "in, upon, getting in, on, out or off" of his motorcycle at the time he was struck. His status could no longer be that of a motorcycle occupant, but only a helpless victim in the roadway. Of course, these are questions that are committed to the factfinder and are not amenable to summary judgment. See School Committee of North Providence v. North Providence Federation of Teachers, Local 920, 468 A.2d 272, 275 (R.I. 1983) ("[f]actual disputes are the sole province of the finder of fact").

We recognize that a strict interpretation of the term "occupying" in circumstances where the contested policy seeks to exclude the insured from coverage is a departure from the factors enunciated in Olivier—a case in which the policy provision was inclusory. Moreover, we mirror the Miller court's sentiment that "[i]t may be counterintuitive to analyze [occupancy] without considering whether the accident would have occurred if the decedent had never been upon his motorcycle in the first place." Miller, 931 A.2d at 1185. However, faced with these circumstances, "that is precisely what must be done * * * for the policy's plain language does not provide otherwise." Id.; see also New London County Mutual Insurance Co. v. Fontaine, 45

come down." As the centuries-old tale goes, Sir Isaac was drinking tea under an apple tree when an apple fell from the tree and landed on his head, thus, leading to Sir Isaac's theory of the Universal Law of Gravity, which requires only a force acting upon an object to cause its movement, and not a formation of intent. We are therefore abundantly satisfied that someone who gets on a motorcycle and is unintentionally ejected from the motorcycle, and is injured upon impact with the earth, was injured in the course of getting off the motorcycle. See Farmers Insurance Co. of Washington v. Clure, 702 P.2d 1247, 1250 (Wash. Ct. App. 1985) ("[A] fair and ordinary meaning * * * of the phrase * * * 'while occupying' refers to injuries sustained when thrown from a vehicle during a collision.").

- 11 -

A.3d 551, 557 (R.I. 2012) (stating that, when interpreting the provisions of an insurance policy, "we look within the 'four corners of [the] policy, viewing it in its entirety, [and] affording its terms their plain, ordinary and usual meaning'" (quoting Town of Cumberland v. Rhode Island Interlocal Risk Management Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004))); Miller, 931 A.2d at 1185 ("If [the insurer] wished to exclude from coverage injuries arising out of the use of—as opposed to 'while occupying'—'any motor vehicle * * * which is not insured for * * * coverage under [the policy],' it could very easily have done so.").

Accordingly, our resolution of this dispute may proceed no further. The question of which impact caused the decedent's fatal injuries, and the time or distance between them, are questions of fact for the jury. Therefore, because the record evinces a genuine issue of material fact, the granting of summary judgment in favor of the defendant was erroneous. See Canavan v. Lovett, Schefrin and Harnett, 862 A.2d 778, 783 (R.I. 2004) ("[I]f the record evinces a genuine issue of material fact, summary judgment is improper and we will accordingly reverse." (citing Belanger v. Silva, 114 R.I. 266, 267-68, 331 A.2d 403, 405 (1975))).

**Conclusion**

For the reasons stated herein, we sustain the plaintiff's appeal and vacate the summary judgment entered in favor of the defendant. The record shall be remanded to the Superior Court for proceedings in accordance with this opinion.

**Robinson, J., concurring in part and dissenting in part.** I do not substantively disagree with the legal discussion in the majority's opinion; we part ways only as to the majority's ultimate determination that genuine issues of material fact remain in the case due to the fact that, according to the majority, under some set of facts, Mr. Esposito could be said to

- 12 -

have been "getting off" his motorcycle. The majority identifies the following as being disputed facts which it deems to be material: (1) "[t]he question of which impact caused the decedent's fatal injuries;" and (2) "the time or distance between [the impacts]." In explanation of its conclusion relative to the issues of material fact, the majority states the following:

> "Given [the definition of occupying in the insurance contract,] * * * if decedent died from the resulting impact with the roadway after the first collision with the trash barrel, or in such a circumstance that the second impact was so close in time and proximity as to be considered simultaneous, it could be found * * * that he was occupying his motorcycle at the time he was fatally injured. In that case * * * decedent was indeed 'getting off' his motorcycle at the time of the fatal injury."

While I readily acknowledge that there are facts in dispute in this case, it is my opinion that those disputed facts are not <u>material</u>. It is my view that, regardless of which impact was fatal or how close in time the impacts took place, the decedent was not occupying his motorcycle at the time when he sustained the "bodily injury" that is referenced in the exclusion from the UM coverage provision in the Quincy Mutual policy. I am simply unable to perceive any other interpretation of the straightforward and unambiguous definition of "occupying" that is set forth in the insurance contract at issue. That definition reads as follows: "'Occupying' means in, upon, getting in, on, out or off." While I intend absolutely no disrespect for the views of those who read the quoted language differently, it is very clear to me, as a matter of plain English, that the decedent, Anthony Esposito, cannot be said to have been "in, upon, getting in, on, out or off" his motorcycle when he sustained the bodily injuries that are referenced in the record.

I am especially unable to agree with any suggestion that Mr. Esposito was somehow "getting * * * off" his motorcycle at the time when he sustained a bodily injury. I find it to be highly unusual as a matter of English usage to understand the verbal expression "getting off" as being descriptive of a completely involuntary event such as being thrown from a motorcycle as

- 13 -

the result of a violent collision. If I stand up from the chair in my office in order to go to lunch, one can rightly describe me as "getting off" that chair. However, if a miscreant were to, by brute strength, gradually force me out of my chair onto the floor, I do not think that most speakers of English would say that I was in the process of getting out of my chair. Perhaps once I was on the floor, one could say, however infelicitously, that I had been gotten out of my chair. But the active verbal form "getting off" would not, in my view, accurately describe what had transpired. The verbal expression "getting off" as applied to a person leaving a place where he or she has, up to that moment been seated or otherwise located, connotes active and volitional activity—especially in the context of leaving one place to go elsewhere.[1] It does not, to my mind, properly describe what is happening when a person is involuntarily displaced from the position that he had been occupying.[2]

For these reasons, I concur with the majority's ultimate determination to vacate the judgment of the Superior Court, but I am respectfully unable to concur with the entirety of the reasoning which led it to that determination.

---

[1]  I cannot help recalling in this context the aphorism usually attributed to President Truman: "If you can't stand the heat, get out of the kitchen." See John Bartlett, Familiar Quotations 788 (Emily Morison Beck ed., 15th ed. 1980). The verb "get" in that aphorism certainly implies active and volitional activity.

[2]  Furthermore, even if a diligent search should disclose a quotation from some respectable source using the "getting off" expression in the manner accepted by the majority, such a quotation would surely be an outlier. And I would then fall back on the venerable "contra proferentem" rule in construing the definition that is set forth in the Quincy Mutual policy of insurance. See Rhode Island Hospital Trust National Bank v. McKee Brothers Oil Corp., 649 A.2d 511, 511 (R.I. 1994) (mem.) (explaining the rule of contra proferentem as meaning that "agreements are to be construed against the drafting party").

- 14 -

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Jeanne Jackson, Executrix of the Estate of Anthony J. Esposito, Jr. et al. v. Quincy Mutual Fire Insurance Company et al. |
| **Case Number** | No. 2016-19-Appeal. (PC 12-1793) |
| **Date Opinion Filed** | May 5, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff: Edward John Mulligan, Esq. For Defendant: Richard A. van Tienhoven, Esq. |

SU-CMS-02A (revised June 2016)