Chief Justice Suttell,
dissenting.
The question presented in this appeal is really quite simple. Essentially, it boils down to: Where do you draw the line? At what point does the causal connection between an injured plaintiff and the insured motor vehicle become too attenuated to hold that the plaintiff was “occupying” the vehicle at the time of the injuries?
The majority raises a compelling and noble justification for extending coverage to include the plaintiff in this case. Clearly, Ms. Hudson’s actions were commendable. It is the statutory policy of this state to encourage the rendering of reasonable assistance at the scene of an emergency.[3] Moreover, G.L. 1956 § 11-56-1 purports to punish the failure to do so as a petty misdemeanor in certain circumstances.[4] Nevertheless, the extent of uninsured motorists (UM) coverage is a matter of contract to be interpreted in accordance with the plain and ordinary meaning of the terms of the insurance policy, Henderson v. Nationwide Insurance Co., 35 A.3d 902, 906 (R.I. 2012), in light of “what the ordinary reader and purchaser * * * would have understood them to mean.” Goldstein v. Occidental Life Insurance Co. of California, 108 R.I. 154, 159, 273 A.2d 318, 321 (1971).
In the case under review, Ms. Hudson, as a passenger in the insured vehicle, was entitled to coverage under the UM provision of the policy “while occupying” the insured automobile. The policy defines “occupying” as “in, upon entering into or alighting from.” Because plaintiff relies upon the operative terms of the policy while seeking to include Ms. Hudson within the ambit of coverage, this Court employs a broad and liberal interpretation of the policy language. Accordingly, the Court applies the four factors set forth in General Accident Insurance Co. of America v. Olivier, 574 A.2d 1240 (R.I. 1990) *1162 when analyzing whether a non-named “insured” is “occupying” an insured motor vehicle for purposes of UM coverage.
The first' prong of the Olivier criteria is whether “there is a causal relation or connection between the injury and the use of 'the insured vehicle.” Olivier, 574 A.2d at 1241. This inquiry is further refined in Olivier by this Court’s finding as persuasive an opinion of the Supreme Court of Florida which construed policy language “arising out of the use of a motor vehicle” as simply requiring “some nexus between the motor vehicle and the injury.” Government Employees Insurance Co. v. Novak, 453 So.2d 1116, 1119 (Fla. 1984). In my judgment, however, the nexus required must be a reasonable one. In fact, this Court in Olivier found there to be a “substantial nexus * * * between the decedent’s status -as a passenger in the insured motor vehicle and her being attacked * * Olivier, 574 A.2d at 1242.[5]
Under the circumstances of this case, I do not believe that Ms. Hudson has established a causal relation between her injuries and the use of, the insured vehicle. Rather, I am in agreement with the trial justice that “[wjhen Ms. Hudson heard the crash and was alerted to the collision, her presence inside the insured vehicle was merely incidental to the events that followed.” Ms. Hudson and her companion had arrived at the Amazing Superstores and had parked the vehicle. Presumably, the Amazing Superstores was not their final destination that evening; nevertheless, they had in fact completed that segment, of their overall journey.
A salient consideration in circumstances in' which the injured party is a so-called Good Samaritan, I believe, ought to be whether the injured party was required to interrupt her or his travel in order to render assistance at the scene of an emergency. See Eutzberger v. Foster, 151 Wash.2d 396, 89 P.3d 689, 698 (2004) (en banc). That was not the situation in the case at bar. Ms. Hudson, rather, had reached her interim destination. She was sitting in a parked car when she heard the sound of the accident; whether that was one or two minutes or one or two hours after the car was parked matters not. As laudable as it is to provide her coverage, to do so requires, in my view, an unreasonable expansion of the policy language.
Accordingly, I do not believe that the plaintiff has established “a causal relation or connection between the injury and the use of the insured vehicle.” I would, therefore, affirm the judgment of the Superior Court.

. See Ouellette v. Carde, 612 A.2d 687, 689 (R.I. 1992) (explaining that the rescue doctrine, which grants immunity to certain voluntary rescuers against contributory negligence claims, "was developed to encourage rescue”); see also G.L. 1956 § 5-54-20.1; G.L. 1956 §§ 9-1-27; 9-1-27.1; 9-1-34 (granting immunity from claims of ordinary negligence to certain individuals who voluntarily or gratuitously render aid in an emergency).

.I take no position on the questions of whether G.L. 1956 § 11-56-1 applies to the facts of this case or indeed whether it is enforceable at all.

. The Supreme Court of Florida in Novak also concluded that there was a "highly substantial connection between [the injured party’s] use of the motor vehicle and the event causing her fatal injury.” Government Employees Insurance Co. v. Novak, 453 So.2d 1116, 1119 (Fla. 1984).