Lisa M. ELGAR

v.

NATIONAL CONTINENTAL/PRO-
GRESSIVE INSURANCE
COMPANY et al.

No. 2003–554–Appeal.

Supreme Court of Rhode Island.

June 4, 2004.

Paul A. Anderson, Esq., Providence, for Plaintiff.

Howard Merten, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## AMENDED OPINION

PER CURIAM.

This case came before the Supreme Court on April 7, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised on appeal should not summarily be decided. The plaintiff, Lisa M. Elgar (plaintiff or Elgar), appeals from a judgment in favor of the defendants, National Continental/Progressive Insurance Company (National) and Geico Casualty Insurance Company (Geico or collectively defendants), denying her request that defendants compensate her for injuries she suffered as a result of an assault by customers of the taxi she was driving.[1] Discerning no error, we affirm the judgment of the Superior Court.

The following facts are undisputed. Elgar was employed as a taxi driver for B & H Transportation, Inc. (Best Taxi). On May 3, 2000, Elgar picked up two male passengers and drove them to Cowesset Hills Apartments. After the taxi arrived at the apartment complex, Elgar drove the passengers to various buildings at their direction. When she parked the taxi and turned to collect her fare, she was violently assaulted by the two men she was driving, suffering serious and permanent injuries. The plaintiff's assailants subsequently were apprehended and convicted of these crimes.

On January 19, 2001, plaintiff filed a complaint against National, the insurer of Best Taxi, and Geico, her own insurer. Elgar's primary contention was that she was entitled to benefits under the uninsured motorist coverage provisions of both her employer's motor vehicle policy and her own personal motor vehicle policy. The uninsured motorist provision of the National policy (the provision) provided as follows:

> "[National] will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.'"

On March 14, 2001, National moved to dismiss plaintiff's claim pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. National argued that plaintiff was not entitled to uninsured motorist benefits because she was not involved in an "accident" with the "drivers" of an "uninsured motor vehicle." The plaintiff filed an objection to National's motion and, on April 23, 2000, moved for summary judgment pursuant to Rule 56(a) of the Superior Court Rules of Civil Procedure. The plaintiff argued that she was entitled to uninsured motorist benefits under the provision because her attackers "were clearly directing the operation of the taxi, thus effectively becoming its 'drivers.'" On April 9, 2001, Geico also moved for summary judgment against plaintiff.

The Superior Court conducted a hearing on all motions and, on June 18, 2001, the hearing justice issued a decision granting National's and Geico's motions and denying Elgar's motion for summary judgment. The Court ruled that Elgar's assailants were passengers, not drivers, and that there was no uninsured motor vehicle involved in the incident that gave rise to plaintiff's personal injuries. Judgment was entered for National and Geico on July 3, 2001. Elgar timely appealed.

---

1. Elgar has stipulated to the dismissal of her appeal against Geico Casualty Insurance Company, an original codefendant and appellee to this case.

## Standard of Review

■ The Superior Court's decision in this case dismisses the plaintiff's complaint against National for failing to state a claim under Rule 12(b)(6). However, in its decision, the Court considered the terms and conditions of the National insurance policy under which plaintiff was attempting to secure recovery. The particular terms and conditions themselves were not included in plaintiff's complaint, nor was a copy of the insurance policy attached to the complaint. Accordingly, the Superior Court considered evidence beyond the four corners of the complaint, and National's motion to dismiss should have been converted into a motion for summary judgment under Rule 56. *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721, 726 (R.I.2003). Because plaintiff has not raised any objections to this procedure, we shall treat the judgment as having been reached pursuant to Rule 56.

■ It is well settled that we undertake a *de novo* review of a Superior Court decision on a motion for summary judgment, and that we apply the same standards during our review as the Superior Court did in the first instance. *Kingfield Wood Products, Inc. v. Hagan*, 827 A.2d 619, 623 (R.I.2003) (per curiam). "The party who opposes summary judgment bears the burden of proving the existence of a disputed material issue of fact and, in so doing, has an affirmative duty to produce specific evidence demonstrating that summary judgment should be denied." *Hudson v. City of Providence*, 830 A.2d 1105, 1106 (R.I.2003) (per curiam). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003) (quoting *Carlson v. Town of Smithfield*, 723 A.2d 1129, 1131 (R.I.1999) (per curiam)).

## Controlling Precedent

■ Elgar's theory of the case is that the provision became operative under these facts because her assailants were the *de facto* drivers of the taxi. The plaintiff reasons that although she was the one physically driving the car, she was doing so at the *direction* of her passengers, effectively rendering them the taxi's operators. We will assume for the purposes of our review that neither of these two assailants was insured to operate the taxi. According to plaintiff, when she was assaulted by these two individuals, they were effectively operating and controlling an uninsured motor vehicle, and she is entitled to insurance payment for the injuries she suffered during that "accident."

This Court has ruled on the scope and application of uninsured motorist insurance provisions three times. The first in time is *General Accident Insurance Company of America v. Olivier*, 574 A.2d 1240 (R.I.1990), in which a passenger in a vehicle that was involved in a collision with an uninsured vehicle was shot and killed by the driver of the uninsured vehicle after an officer at the scene directed her to stand near a parked police cruiser. The Superior Court entered a declaratory judgment in favor of the insurance company on the grounds that the passenger was not an occupant of the motor vehicle at the time she was shot. We reversed on appeal because the decedent was a passenger of an insured motor vehicle at the time the collision with the uninsured vehicle occurred, and it was her status as a passenger that had her standing in the path of that fatal bullet. *Id.* at 1242. We further held that because the shooting was, from

her perspective, an unforeseen and unfortunate incident, her death was "caused by an accident" within the meaning of the policy. *Id.* Finally, we determined that the question of whether decedent's death arose out of the ownership, maintenance or use of the uninsured vehicle turned on whether there was a "substantial nexus" between the injury and the uninsured vehicle, not whether the vehicle itself was the "instrumentality" of those injuries. *Id.* We noted that uninsured motorist provisions "should be construed liberally because their function is to extend coverage broadly." *Id.* (citing *Valdes v. Smalley*, 303 So.2d 342 (Fla.Dist.Ct.App.1974)).

In *Liberty Mutual Insurance Co. v. Tavarez*, 754 A.2d 778 (R.I.2000), a seventeen-year-old boy in an insured motor vehicle was shot and killed by assailants operating an uninsured motor vehicle. We affirmed a Superior Court ruling that the decedent's estate was entitled to the benefits of his policy's uninsured motorist provision. The decedent's death directly resulted from his assailant's use of an uninsured motor vehicle as the platform from which the decedent was shot. *Id.* at 780. The operation of the vehicle created a "nexus" between the uninsured motor vehicle and the fatal injury to the decedent. *Id.* at 780–81.

Conversely, in *Nationwide Mutual Insurance Co. v. Steele*, 747 A.2d 1013 (R.I. 2000) (mem.), the insured complainant (Steele) was sitting in her car when a masked gunman approached her vehicle on foot and violently assaulted her. After assaulting her, the gunman threw Steele to the ground and drove away in her car. Steele sought to recover under the uninsured motorist provision of her policy, and the Superior Court entered summary judgment on her behalf. We reversed, holding that Steele "failed to present evidence of any nexus between her injuries and the operation of an uninsured vehicle." *Id.* at 1014. In so doing, we cautioned that there are "reasonable limitations on the construction" of G.L.1956 § 27–7–2.1 [2] and uninsured motorist provisions issued thereunder "in order to protect insurers from groundless claims." *Steele*, 747 A.2d at 1014. "Such limitations include the requirement that an insured present credible evidence that his or her injury was caused by the owner or operator of an uninsured * * * vehicle before a recovery of benefits will be allowed." *Ladouceur v. Hanover Insurance Co.*, 682 A.2d 467, 470 (R.I.1996) (per curiam).

We agree with the Superior Court that *Steele* controls in this case, and that National is entitled to a judgment as a matter of law. *Olivier, Tavarez,* and *Steele* all hold that there must be a nexus between the occupant or operation of an uninsured motor vehicle and the insured party to recover under an uninsured motorist provision in his or her policy. As the trial justice correctly perceived, no such nexus exists here because, simply put, there is no uninsured motor vehicle involved in this tragedy. Elgar's assailants were passengers in the car *she* was driving. They were not physically operating the taxi or any other

---

**2.** Entitled "Uninsured motorist coverage," G.L.1956 § 27–7–2.1(a) provides, in pertinent part:
"No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state * * * unless coverage is provided in or supplemental to the policy, for bodily injury or death * * * for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles * * *."

vehicle, and did not become the *de facto* operators of her vehicle merely because they were directing her to a specific location. As was the case in *Steele*, in which coverage was denied, there was only one vehicle involved—the insured's.

An insurance policy is a contract with terms that must be construed in accordance with their plain and ordinary meaning. *See Employers Mutual Casualty Co. v. Pires*, 723 A.2d 295, 298 (R.I. 1999) (per curiam). A condition precedent to recovery under the uninsured motorist provision is that the insured must be "entitled to recover damages from the owner or driver of an 'uninsured motor vehicle.' " Accordingly, the plain and ordinary meaning of the terms further erodes plaintiff's argument. Black's Law Dictionary 495 (6th ed.1990) defines a "driver" as a "person actually doing driving, whether employed by owner to drive or driving his own vehicle." This definition clearly describes Elgar's role in the taxi. A "passenger" is "a person who gives compensation to another for transportation. * * * [O]ne who is being carried by another for hire, on other occasions, the word is interpreted as meaning any occupant of a vehicle other than the person operating it." *Id.* at 1123. This definition perfectly describes Elgar's assailants that evening and destroys any pretension that they should be considered the drivers of the taxi for purposes of recovery under the uninsured motorist provision.[3]

The Intermediate Court of Appeals of Hawaii has passed on a situation similar to the one presented here. In *So v. Liberty Mutual Insurance Co.*, 81 Hawai'i 110, 912 P.2d 607–08 (Ct. App.1996), the plaintiff was a taxi driver who was stabbed by her passenger and who attempted to recover under the uninsured motorist provision of her employer's insurance policy. The defendant, Liberty Mutual Insurance Company, filed a summary judgment motion arguing that the uninsured motorist benefits did not apply "because an uninsured vehicle was not involved in the injuries suffered by [p]laintiff." *Id.* at 608. Based on policy language practically identical to the insurance provision at issue here, the Court held that:

> "The policy clearly contemplates that any harm suffered by the insured 'results' from an uninsured motor vehicle. Plaintiff was stabbed by his passenger Lowrie. The only vehicle involved when Plaintiff was injured was his taxi, which is covered by his policy and does not qualify as an uninsured motor vehicle. Therefore, Plaintiff is not entitled to uninsured motorist benefits under his business auto insurance policy." *Id.* at 608–09.

Likewise, Elgar's taxi was the only vehicle involved in this incident.

The plaintiff's argument is premised on a logical inconsistency: she is asserting that the car she was driving was insured by National and that she may recover under that policy. At the same time, she is asserting that the taxi was an uninsured motor vehicle within the meaning of that policy at the time she was attacked. Our policy of according broad construction to uninsured motorist provisions notwithstanding, one vehicle cannot simultaneously be insured and uninsured for purposes of recovery under the uninsured motorist provision of the insurance contract.

---

3. The Rhode Island Motor Vehicle code, G.L. 1956 chapter 1 of title 37, also clearly defines Elgar as the driver and the operator of the vehicle. " 'Driver' means any operator or chauffeur who drives or is in actual physical control of a vehicle." Section 31–1–17(c). " 'Operator' means every person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle * * *." Section 31–1–17(d).

## Conclusion

For the reasons set forth above, we affirm the judgment of the Superior Court. The papers of the case shall be remanded to the Superior Court.