# IN THE SUPREME COURT OF IOWA

No. 67 / 04-0947

Filed October 6, 2006

**TRANG LE,** as Mother and Next Friend of AMANDA LE, A Minor, and **TRANG LE**,

Appellants,

vs.

**YAACOV VAKNIN** and **AMERICAN FAMILY MUTUAL INSURANCE COMPANY**,

Appellees.

---

Appeal from the Iowa District Court for Story County, Carl D. Baker, Judge.

Plaintiffs appeal from adverse judgment in action against uninsured-motorist carrier and also appeal from court's reduction of damages awarded against uninsured tortfeasor. **AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**

Nathan E. Levin and Angelina M. Thomas of Newbrough, Johnston, Brewer, Maddux & Howell, L.L.P., Ames, for appellants.

Scott K. Green, West Des Moines, for appellee American Family Mutual Insurance Company.

No appearance for appellee Yaacov Vaknin.

**CARTER, Justice.**

Plaintiffs, Amanda Le and her mother, Trang Le, appeal from an adverse judgment in their action against American Family Insurance Company (American Family), their uninsured-motorist carrier. They also appeal from the district court's reduction of the damages awarded against defendant Yaacov Vaknin based on a third-party payment of plaintiffs' medical expenses. After reviewing the record and considering the arguments presented, we affirm the judgment in favor of American Family, vacate the judgment against Vaknin, and remand for further proceedings.

Amanda Le (Amanda) was a passenger in an automobile driven by defendant Vaknin and owned by his father. Amanda's boyfriend, Hop Nguyen, and her friend, Kate Polouchkina, were also passengers in the car. Both Amanda and Kate were thirteen years of age, did not have learning permits, and had not previously driven a car. Notwithstanding this fact, Vaknin permitted first Kate and later Amanda to drive the car. When Amanda was driving, she lost control of the vehicle when negotiating a curve. At this point, Vaknin, who was seated next to her, attempted to grab the steering wheel in order to control the vehicle, but was unsuccessful in preventing the car from leaving the road and crashing into a tree. As a result of that collision, Amanda sustained severe personal injuries.

Amanda and her mother brought this action against Vaknin and his father. The suit against Vaknin's father was later dismissed without prejudice. Plaintiffs' claim against Vaknin was based on his alleged negligent entrustment of a motor vehicle to an unqualified driver. Later, plaintiffs amended their action to include American Family, which provided uninsured-motorist coverage to Amanda and Trang.

The jury returned a verdict finding that Vaknin's fault was a sixty percent contributing cause of plaintiffs' injuries and Amanda's fault was a

forty percent contributing cause. The jury fixed plaintiffs' damages at $18,864.29. In addition, it answered interrogatories finding that Vaknin was not the "operator" of the motor vehicle at the time of the accident, a response that negated liability of American Family under its uninsured-motorist policy, and also finding that Trang's health insurer had paid $9891 toward the medical expenses that had been included in the damage award. The district court reduced the gross damage award to account for both third-party payment and contributory fault.

**I. *Whether the Jury Was Properly Instructed Concerning the Term "Operator" of a Motor Vehicle as Used in the American Family Policy.***

Plaintiffs argue that in instructing the jury the district court provided an improper definition of "operator" as that term was used in determining American Family's uninsured-motorist coverage. We review the district court's rulings on jury instructions to determine if they are a correct statement of the applicable law based on the evidence presented. *Collister v. City of Council Bluffs*, 534 N.W.2d 453, 454 (Iowa 1995); *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 324 (Iowa 1992).

The uninsured-motorist provisions contained in American Family's policy state:

> We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle.

In the present litigation, the action against the owner of the vehicle had been dismissed by plaintiffs. They sought to invoke uninsured-motorist benefits on their claim against Vaknin on the theory that he was the operator of the motor vehicle in which Amanda was injured.

The district court in its Instruction No. 17 defined the word "operator" in the manner in which that word is defined in Iowa Code section 321.1(48)

(1999). Accordingly, the instruction defined "operator" as "every person who is in actual physical control of a motor vehicle upon a highway." Plaintiffs urge that the definition of operator contained in Iowa Code section 321.1(48) is only intended to apply in matters governing the duties of persons operating motor vehicles on the public highway and is not applicable in insurance coverage disputes. They suggest that entirely different policies come into play in determining the meaning of "operator" for purposes of uninsured-motorist coverage and suggest that in that context that term should include persons with a right to control the vehicle who have delegated physical control to another under their supervision.

We agree with plaintiffs that caution should be exercised in applying statutory definitions to situations in which the particular statutory scheme may not be involved. Notwithstanding this cautionary approach, we are satisfied that, within the context of American Family's uninsured-motorist coverage, the term "operator" has reference to a person having physical control of a motor vehicle. Uninsured-motorist coverage is statutorily mandated and exists in the milieu of automobile liability disputes. Consequently, we are satisfied that this word is used in both Iowa Code section 516A.1 (the statute mandating uninsured-motorist coverage) and American Family's policy in the same sense that it is employed in the statutory law of motor vehicle regulation.

In *Twogood v. American Farmers Mutual Automobile Insurance Ass'n*, 229 Iowa 1133, 296 N.W. 239 (1941), we resorted to the statutory definition contained in the motor vehicle laws to determine the meaning of the word "operator" as used in an insurance policy. In considering the meaning of that word, we stated:

> With reference to the use of a motor vehicle on the highway, paragraph 39 of the 1939 Code section 5000.01 defines an operator thereof as meaning ". . . every person, other than a

chauffeur, who is in actual physical control of a motor vehicle upon a highway."

*Twogood*, 229 Iowa at 1138, 296 N.W. at 242.  We further stated in *Twogood*:

> This does not mean that one who has general authority over a driver with respect to the destination, route, or rate of speed of the vehicle, is operating the vehicle.

*Id.*  We adhere to this view in the present case.[1]

The *Twogood* decision relied in part on a decision of the New York Court of Appeals, which applied that state's motor vehicle statutes to define the word "operator" as used in an insurance policy exclusion.  The court in that case stated:

> The word "operate" is used throughout the statute as signifying a personal act in working the mechanism of a car. The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself. . . .
>
> Obviously, the word is used in the policy in the same sense in which it is used in the Highway Law.

*Witherstine v. Employers' Liab. Assurance Corp.*, 139 N.E. 229, 230 (N.Y. 1923).  A similar view was expressed by the Rhode Island Supreme Court in *Elgar v. National Continental/Progressive Insurance Co.*, 849 A.2d 324 (R.I. 2004), wherein the court stated:

> Elgar's assailants were passengers in the car *she* was driving. They were not physically operating the taxi or any other vehicle, and did not become the *de facto* operators of her vehicle merely because they were directing her to a specific location.

---

[1]Reliance was also placed on the statutory definition of "operator" as contained in the motor vehicle statutes in a decision this court rendered in a boat operator case.  *Pfeiffer v. Weiland*, 226 N.W.2d 218 (Iowa 1975), presented the question of whether a water skier trailing behind a boat and giving commands concerning its operation could be considered an operator for purposes of Iowa Code section 106.18 (1966), which rendered the "operator" of a boat liable for its negligent operation.  Relying on the statutory definition of operator contained in the statutory predecessor of Iowa Code section 321.1(48), we held that to be an operator of a boat one must have actual physical control of the vessel.

*Elgar*, 849 A.2d at 327-28. The district court did not err in defining the term "operator" in Instruction No. 17.

### II. *Plaintiffs' Temporal Argument.*

Plaintiffs' second argument is that it was error for the district court to phrase its interrogatory to the jury so as to only determine Vaknin's status as an operator at the time of the accident. They urge that the court should have allowed Vaknin's status as an operator of the vehicle at an earlier time to trigger uninsured-motorist coverage under the American Family policy. For this reason, plaintiffs assert that interrogatory No. 4 should not have read "was Yaacov Vaknin the operator of an uninsured motor vehicle at the time of the accident?" But rather, "was Yaacov Vaknin the operator of an uninsured motor vehicle at the time of his negligence?"

We are satisfied that the district court correctly determined that the type of uninsured liability that triggers application of American Family's coverage is operational fault causing the injury for which recovery of uninsured-motorist benefits is claimed. *See Elgar*, 849 A.2d at 326 (uninsured-motorist coverage requires that insured present credible evidence that his or her injury was caused by the owner or operator of an uninsured motor vehicle). That being the case, it was logical for the trial court to fix the time for the jury's determination of operator status as the time of the accident.

### III. *Vaknin's Degree of Physical Control.*

Plaintiffs argue in the alternative that, if actual physical control is the determining factor in deciding whether Vaknin was an operator of the motor vehicle, he exercised that degree of control when he seized the wheel of the vehicle. Based on this premise, they urge that the jury's finding that he did not have control is not supported by substantial evidence. Plaintiffs rely in part on the decision of the Washington court in *North Pacific Insurance Co.*

*v. Christensen*, 17 P.3d 596 (Wash. 2001). There, a passenger seized control of the wheel of a motor vehicle that the driver was properly operating and through that action diverted the course of travel across the centerline causing a collision. The Washington court in the *Christensen* case concluded that,

> [w]hen Chase suddenly grabbed the steering wheel, he became the operator of the vehicle in which he had been a passenger. Although Christensen was sitting in the driver's seat, he became powerless to control the car. Chase assumed control of the steering mechanism long enough to cause a collision and resulting injuries.

*Christensen*, 17 P.3d at 599 (footnote omitted).

Assuming without deciding that one who seizes the steering wheel of a motor vehicle and thereby causes an injury-producing accident may be considered to be an operator for uninsured-motorist purposes, we are satisfied that this is not the case if the seizing of the wheel is an effort to prevent an accident caused by faulty operation of the vehicle by the person who has been exercising the driving function. As we concluded in the prior division of this opinion, the type of uninsured liability that triggers uninsured-motorist coverage is operational fault causing the injury for which recovery of benefits is claimed.

In the present case, Vaknin's operator status was submitted to the jury in the face of a strong argument that he was not the operator as a matter of law based on the undisputed evidence. Assuming that the evidence of wheel grabbing presented a jury question on his status, the jury's verdict resolves the issue. To overturn that verdict, plaintiffs would have to show that Vaknin was the operator as a matter of law, and that was clearly not the case.

#### IV. *The Reduction of Damages Based on Third-Party Payment.*

In response to Iowa Code section 668.14, the district court submitted interrogatories requiring the jury to find whether there had been third-party payment of medical expenses by Trang's medical and hospital insurer that was included in the damages awarded and the amount of such third-party payment. As a result of the jury's answers to these interrogatories, the district court reduced the damages awarded by the amount of the third-party payment. Plaintiffs argue that the district court lacked authority to make this reduction of the jury's award because there has been no finding that the insurance carrier making the third-party payment is not subrogated to plaintiffs' recovery. The appellees urge that plaintiffs have failed to preserve error on this issue because they failed to object to the interrogatories that were given to the jury.

In considering the matter of error preservation, we take some guidance from the situation that was presented in *Six v. American Family Mutual Insurance Co.*, 558 N.W.2d 205 (Iowa 1997). That case involved a tortfeasor's attempt to recover from a liability insurer that was alleged to have wrongly refused to defend and indemnify the tortfeasor against a personal injury claim. The jury found that the insurer's liability coverage required it to indemnify the tortfeasor. A dispute was presented as to whether a settlement that had been negotiated by the tortfeasor was reasonable. An interrogatory was submitted to the jury asking it to determine if the settlement was reasonable, which it answered in the negative. No verdict form was given the jury to determine what a reasonable settlement amount would have been.

The insured tortfeasor in the *Six* case had not objected to the interrogatories submitted to the jury, but we concluded that he adequately preserved the issue of an incomplete verdict by means of a posttrial motion.

In ruling on that posttrial motion, the district court in *Six* concluded that the jury's response had resolved the case in a manner that denied any recovery to the plaintiff.

In our review of this ruling, we stated, "We are convinced that, if coverage exists, an insurer that declines to defend a claim continues to be liable to hold its insured harmless for that portion of the stipulated judgment that represents a reasonable and prudent settlement." *Six*, 558 N.W.2d at 207. We then referred to the provisions of Iowa Rule of Civil Procedure 205 (now Iowa R. Civ. P. 1.933), which provides that, if the special verdicts submitted to the jury are incomplete as to an essential element, the trial court, following the jury's discharge, may render any essential factual finding that has been omitted. *Six*, 558 N.W.2d at 207 (citing *P.H.C.C.C., Inc. v. Johnston*, 340 N.W.2d 774, 777 (Iowa 1983)). Based on the provisions of that rule, we remanded the case to the district court to make a factual finding, as in a jury-waived adjudication, as to what a reasonable settlement amount would have been. *Id.*

Plaintiffs' situation in the present case is similar to that presented in *Six* because an essential factual issue was not included in the special verdicts presented to the jury. Our cases applying Iowa Code section 668.14 make it clear that plaintiffs are to be protected against a double reduction of their award that would result from a reduction based on third-party payments when the third-party payor remains subrogated to the remaining recovery. *Kuta v. Newberg*, 600 N.W.2d 280, 290 (Iowa 1999); *Schonberger v. Roberts*, 456 N.W.2d 201, 203 (Iowa 1990). To prevent this from occurring in the present case, the jury should have been required to render a finding as to whether the third-party payor had a subrogation right. Because the issue was not submitted to the jury, an essential factual issue was missing from the special verdicts that the jury returned.

Rule 1.933 provides a method to remedy that omission by having the court render a finding of fact on the subrogation issue based on the existing record. To accomplish that result, we vacate the judgment against Vaknin and remand the case to the district court with instructions to render a finding as to whether a subrogation right existed in the third-party payor. The court shall then enter a new judgment based on the jury's special verdicts as supplemented by its own finding on the subrogation issue.

The judgment in favor of American Family is affirmed. The judgment against Vaknin is vacated and the case remanded for further proceedings in accordance with our instructions. Costs are assessed seventy-five percent to appellants and twenty-five percent to Vaknin.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**