# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1874
No. 25-0628
Filed January 7, 2026

———————————

**Amy Rosteck,**
Plaintiff–Appellee,

v.

**Charles Davisson,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Linn County,
The Honorable Jason D. Besler, Judge.

———————————

**AFFIRMED**

———————————

Peter C. Riley (argued) of Tom Riley Law Firm, P.L.C., Cedar Rapids,
attorney for appellant.

Matthew L. Preston (argued) and Jared T. Favero of Brady Preston
Gronlund PC, Cedar Rapids, attorneys for appellee.

———————————

Heard at oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

The parties to a failed residential real estate contract disagree about how to handle the buyer's earnest money. The buyer filed a replevin action seeking return of her earnest-money payment, received a jury verdict in her favor, and received an award of attorney fees. The seller appeals, arguing: (1) earnest money is not the proper subject of a replevin action, (2) the district court improperly instructed the jury about Iowa's replevin law, (3) the buyer failed to show that she had properly rescinded the contract, and (4) the buyer is not entitled to the attorney's fees and costs awarded.

On our review, we affirm. We find under this particular set of facts the earnest money was readily identifiable in the broker's trust account, which required the money be set aside so that it could be taken and delivered pursuant to a replevin action. And that as applied, the buyer met the conditions of the contract to properly rescind it and thus, is entitled to attorney fees and costs.

## I. Background Facts and Proceedings.

On May 25, 2022, Charles Davisson listed his Cedar Rapids home for sale (the property). Shortly after the property hit the market, Amy Rosteck, through her real estate agent, viewed the property and decided to make an offer. Davisson accepted Rosteck's offer, and the parties began working to finalize the sale.

**A. Seller's Disclosure.** On May 26, 2022, Davisson executed a seller's property disclosure to provide information about the property to Rosteck in compliance with Iowa Code chapter 558A (2022). The disclosure was written on a form created by the Cedar Rapids Area Association of Realtors (CRAAR). In completing the form, Davisson certified that the

information on the form was "true and accurate to the best of [his] knowledge as of the date signed." The form required Davisson to base his responses on "the information known or reasonably available to" him.

In section 4 of the disclosure form, Davisson was asked "Does anything on your property extend onto (encroach on) your neighbor's property . . . ?" In section 18 of the disclosure form, titled "Other," Davisson was required to disclose, in relevant part, (1) whether there were "any legal disputes or actions concerning the property (with neighbors or anyone else)" and (2) whether "there [was] anything else which would adversely affect the value or desirability of the property." Davisson answered "No" to each of these questions.

**B. Purchase and Sale Agreement.** The following day, on May 27, Davisson and Rosteck entered into a purchase and sale agreement (the agreement) for the purchase of the property. The agreement was created using another CRAAR form.

The agreed-upon purchase price for the property was $625,000. Rosteck agreed to put down $100,000 in earnest money to be held in trust by the listing broker. The closing date listed on the agreement was June 27. As an additional provision, Rosteck added, "We would love to close on or before June 27, but would be willing to try to accommodate another date at seller's discretion, if needed."

The agreement required Davisson, upon request, to permit an attorney, selected by the buyer, to create a title opinion for the property to prove that Davisson had merchantable title. The agreement also required Davisson to maintain the property "in its present condition until possession."

The agreement discussed contract rescission in two different provisions. The agreement first stated,

> If Seller fails to fulfill this contract, he will pay the Listing Broker the commission in full. The Buyer shall have the right to have all payments returned, and/or to proceed by any action at law or in equity and the Seller agrees to pay costs and reasonable attorney fees, and a receiver may be appointed.

The agreement also stated, "If the closing is delayed due to the Seller's inability to provide marketable title this contract shall continue in force and effect until either party rescinds after giving seven business days written notice to the other party."

**C. Earnest Money Payment.** Rosteck transferred the $100,000 earnest-money payment to the listing broker, Golden Circle Real Estate Group, LLC d/b/a Keller Wiliams Greater Des Moines (Keller Williams), to hold in trust. Rosteck electronically transferred the money to the broker's trust account using a program called TrustFunds.

The TrustFunds program tracked all deposited monies by creating an invoice that documented who submitted the money, the date and time, the amount of money submitted, the invoice number, and the listing broker. The program kept track of the deposit by chronologically noting all receipts and disbursements, providing for a monthly reconciliation on an individual ledger account. After the money was submitted, an employee of Keller Williams continued tracking the funds in the account. The Keller Williams trust account also contained money from other real estate transactions. Keller Williams maintained the trust account in accordance with Iowa law.

**D. Title Opinion and Title Issues.** Before the parties closed on the agreement, Rosteck requested a title opinion, which, on June 20, Attorney

4

Daniel Willems provided. The opinion, in part, set out actions that needed to be taken before closing. In Willems's words, these actions were "like a checklist of what needs to be done before [he would] approve the closing to happen."

Among the tasks required before closing was the release of one mortgage and satisfaction of several judgments on the property. The mortgage was from Davisson to Dupaco Community Credit Union to secure a loan. The amount of the mortgage was $320,000. There were eleven judgments against the property or Davisson personally: eight foreclosures and three civil judgments.

Each foreclosure action had been brought by GreenState Credit Union and related to other properties Davisson or his company owned. The judgment liens for the foreclosures totaled over $870,000. Davisson alleged that another foreclosure had been resolved and that he had also made payments on the judgment, so the actual amount owed was slightly less.

Regarding the other civil litigation, one judgment was a small claims action in which Davisson owed $6,500 plus interest and court costs. Another was a judgment for $1,014.35 plus interest and court costs.

The final civil action involved a boundary dispute between Davisson and his neighbors at the property. This action arose after Davisson's neighbors hired a surveyor to review their property's boundaries. The survey showed that Davisson's fence encroached onto the neighbors' property. Davisson sued his neighbors, alleging the property on which the fence was built was now his under the theory of adverse possession. His neighbors brought claims of their own, and the matter proceeded to trial in March 2022. Trial resulted in neither party receiving a monetary judgment in their favor

and Davisson had to pay court costs. The neighbors filed a motion for a new trial, which was denied on May 16, 2022. Both Davisson and his neighbors filed notices of appeal on June 16, after the agreement in this case but prior to the property's closing.

Davisson did not disclose the mortgage, foreclosures, the boundary dispute, or the other civil judgments on his seller's disclosure form. According to Davisson, none of these judgments involved or affected the property's value so he did not feel it was necessary to disclose them to a potential buyer. Regarding the boundary dispute specifically, Davisson alleged that at the time of the agreement, neither party had filed a notice of appeal so there was no ongoing litigation.

In any event, Davisson agreed these clouds on the property's title needed to be resolved for the sale to close. To resolve the mortgage, Davisson asserted that he would pay it off with the proceeds from the sale of the property.

To resolve the foreclosures, Davisson argued that GreenState had removed the liens from other properties to permit them to be sold. Davisson also alleged that he and GreenState were working on a forbearance agreement, but that GreenState had attempted to change the terms of the agreement after he had already accepted it. Davisson alleges he was planning to pay the remaining proceeds from the sale of the property, approximately $250,000, to GreenState to help pay down the foreclosure judgments.

However, Davisson's attorney spoke with GreenState's counsel about whether GreenState would be willing to release the liens on the property to permit the sale to go forward. On June 30, GreenState's attorney responded, "They are not willing to release the lien on Mr. Davisson's personal

residence." GreenState's counsel testified the same at trial. As of the date of the trial, the foreclosure liens on the property had not been resolved.

To resolve the boundary dispute, Davisson proposed an easement agreement between Rosteck and the new owner of the neighbors' property. Rosteck was open to this potential solution but wanted to discuss any easement language with her personal attorney. The easement agreement was never finalized.

**E.   Contract Termination.**   Closing was originally set for June 27. Given the issues with the title to the property, closing was pushed back several days. Despite the title issues, Rosteck visited the property for a final walkthrough. During this walkthrough, she noted several issues, primarily that part of the property's lawn and landscaping had died since she made the offer. Rosteck considered these issues to be material changes to the property since the agreement was signed.

Based on the issues with the title and property, Rosteck decided to back out of the agreement. On June 29, Rosteck, through her realtor, filled out another CRAAR form titled "Purchase Contract Release and Disbursement of Earnest Money" and sent it to Davisson. Rosteck's realtor testified at trial that this form is customarily used for the return of earnest money and notice of termination of a contract. Rosteck's expert testified at trial that buyers in Cedar Rapids generally terminate a real estate contract and seek the return of earnest money using the form that Rosteck used in this case. Rosteck contended that this form provided notice to Davisson as required by the contract.

The Purchase Contract Release form required both the buyer and seller to sign the form before the earnest money was released. Davisson

7

refused to sign and consent to the return of the earnest money. Davisson argued that Rosteck did not properly cancel the contract in compliance with the agreement's terms.

**F. Replevin Litigation.** Based on Davisson's refusal to agree to the release of the earnest-money payment, in September 2022, Rosteck filed this replevin action against Keller Williams and Davisson. Keller Williams asked the court for permission to pay the earnest money to the clerk of court pending resolution of the litigation. The court, pursuant to Iowa Code section 643.7, permitted the money to be paid to Rosteck, who then posted a $200,000 bond in accordance with the statute. This ended Keller Williams's involvement in the lawsuit, and Keller Williams was eventually dismissed from the litigation.

The case proceeded to a jury trial in August 2024. When discussing jury instructions, Davisson objected to proposed instruction 9, regarding the identification of property in a replevin action. The court denied Davisson's objection. Davisson requested the court include his proposed instruction 22B, which set out his interpretation of Iowa's replevin law regarding money. The court did not include Davisson's proposed instruction 22B in the final instructions to the jury.

The jury returned a verdict in Rosteck's favor. The verdict form contained four interrogatories in addition to the verdict. The interrogatories asked the jury whether: (1) the earnest money was specifically identifiable, (2) Rosteck proved she was the owner of the earnest money; (3) Davisson breached the Agreement, and (4) Davisson failed to return the earnest money. The jury unanimously answered "Yes" to each question and concluded that Rosteck was entitled to the earnest money. On August 26, the district court entered judgment on the verdict.

On September 9, Davisson filed an initial motion for judgment notwithstanding the verdict. The next day, Davisson filed a supplement to his motion and, alternatively, a motion for new trial. In these filings, Davisson realleged that the earnest money was not the proper subject of a replevin action because it was not specifically identifiable. Davisson also argued that Rosteck failed to provide the requisite seven-day notice and therefore did not properly rescind the contract.

On November 7, the court denied Davisson's motion for judgment notwithstanding the verdict and motion for new trial. Davisson appeals.

**G. Attorney Fees.** While Davisson's post-trial motions were pending, on October 29, Rosteck filed an application for attorney fees and costs based on the language of the agreement. Rosteck requested $113,657.45 in fees and $25,575.01 in costs, for a total of $139,232.46. Davisson resisted, arguing in part that the court should wait until the resolution of his appeal to rule on Rosteck's application. The court held a hearing on the motion on February 14, 2025.

On March 14, after Davisson filed his first notice of appeal, the district court entered an order on Rosteck's application. The court awarded Rosteck $129,143.29 in attorney fees and costs, a reduction of $10,089.17 from her application. The reduction was based on what the court concluded were (1) duplicate fees and (2) expenses associated with posting the bond that should not be included in the award.

Davisson appeals the award of attorney fees and costs. Davisson's two appeals have been consolidated for our review.

## II. Standard of Review.

We review a district court's ruling on a motion for judgment notwithstanding the verdict for correction of legal error. *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 445 (Iowa 2016) (citation omitted); *see also Prenger v. Baker*, 542 N.W.2d 805, 807 (Iowa 1995) ("The standard of review in [a] replevin action is for correction of errors of law."). "We examine whether substantial evidence supports each element of the claim in a light most favorable to the nonmoving party." *Winger*, 881 N.W.2d at 445 (cleaned up). "Evidence is substantial if a jury could reasonably infer a fact from the evidence." *Id.* (citation omitted).

"The scope of our review of a district court's ruling on a motion for a new trial depends on the grounds raised in the motion." *Id.* (citation omitted). We review the denial of a motion for new trial on legal grounds for correction of errors at law. *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007).

"We review a court's refusal to give an instruction for an abuse of discretion, while we review challenges to jury instructions for correction of errors at law." *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005). "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (citation omitted).

"We generally review decisions concerning attorney fees for an abuse of discretion." *Lee v. State*, 874 N.W.2d 631, 637 (Iowa 2016). "We will reverse a court's discretionary ruling only when the court rests its ruling on grounds that are clearly unreasonable or untenable." *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 469 (Iowa 2010).

### III. Analysis.

On appeal, Davisson argues that the court improperly submitted the replevin claim to the jury because (1) Rosteck's earnest money is not the proper subject of a replevin action, (2) the jury instruction regarding whether property is "specifically identifiable" misstated Iowa law, (3) there was no evidence that Rosteck satisfied the contractual requirements to rescind the contract, which was a condition of her right to immediate possession of the earnest money, and (4) Rosteck is not entitled to the award of attorney fees and costs. We will address each issue in turn.

**A. Replevin for Return of Earnest Money.** Davisson first argues that the earnest-money payment cannot be the subject of a replevin action. In Davisson's view, money can only be the subject of a replevin action when it is in a separate container like a bag or package and that funds cannot be identifiable once deposited in a bank account. We conclude, based on the specific facts of this case, that Rosteck has shown the earnest money was specifically identifiable and therefore could be the subject of a replevin action.

"Replevin is an action to recover specific personal property that has been wrongfully taken or wrongfully detained." *Flickinger v. Mark IV Apartments, Ass'n*, 315 N.W.2d 794, 796 (Iowa 1982). "Replevin is a specialized statutory remedy with a narrow purpose designed to restore possession of property to the party entitled to possession." *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9 (Iowa 2000). Judgment in a replevin action "shall determine which party is entitled to the possession of the property . . . and shall also award damages to either party as the party may be entitled to for the illegal detention thereof." Iowa Code § 643.17. It is the plaintiff's burden to show, by a preponderance of the evidence, that "she was entitled to possession at the time the action was filed." *Pulliam v. Danny Mac*,

No. 15-2115, 2017 WL 1278246, at *4 (Iowa Ct. App. Apr. 5, 2017) (citing *Marx Truck Line, Inc. v. Fredricksen*, 150 N.W.2d 102, 105 (Iowa 1967)).

Iowa Code chapter 643 governs replevin actions in Iowa. Relevant here, a replevin petition must contain "[a] particular description of the property claimed" and "[t]he facts constituting the plaintiff's right to the present possession thereof." Iowa Code § 643.1(1), (3).

Iowa Code chapter 643 does not define "property." Our case law, however, provides some guidance for the kinds of property that may be the subject of a replevin action, including money.

"The general rule is that money is not the subject of an action of replevin unless it is so marked or labeled as to be capable of identification." *1967 Senior Class of Pekin High Sch. v. Tharp*, 154 N.W.2d 874, 876 (Iowa 1967). "It must be specific identifiable money." *Id.* In discussing this general rule, the Iowa Supreme Court cited an Arkansas Supreme Court case, which stated, "Money is not the subject of an action of replevin, unless it is marked or designated in some manner so as to become specific as regards the power of identification, such as being in a bag or package." *Id.* (quoting *Spear v. Arkansas Nat'l Bank*, 163 S.W. 508, 509 (Ark. 1914)). Our supreme court has not revisited its opinion on money as the subject of a replevin action since 1967.

In *Senior Class*, the plaintiffs sought the return of the senior class funds, which were deposited into three banks, in different amounts, and "commingled with hot lunch and other activities money and deposited in the banks." *Id.* The court concluded the senior class funds were not specifically identifiable and could not be recovered in a replevin action. *Id.* at 876–77.

12

The court analogized the facts of *Senior Class* to those of *Eller v. Myers*, 294 N.W. 232 (Iowa 1940), in which:

> plaintiff sought possession of the funds of a judgment in his favor which had been paid to the clerk of court and held in a general fund. We there held the allegations did not meet the requirement of description of specific identifiable money and affirmed dismissal of the petition.

*Senior Class*, 154 N.W.2d at 876–77.

The court distinguished the facts of *Senior Class* from those of *Eaton v. Blood*, 208 N.W. 508 (Iowa 1926), in which:

> plaintiff was allowed in a replevin action to obtain possession of a promissory note, mortgage, four Liberty bonds, a pass book and a savings account. It was admitted in the answer defendant received and had in his possession the property described in the petition. The defense was a denial plaintiff was entitled to possession of the property.

*Senior Class*, 154 N.W.2d at 877.

Davisson relies on *Williams Management Enterprises, Inc. v. Buonauro*, a 1986 Florida appellate decision, in which the court concluded that money deposited into an attorney's trust account was incapable of specific identification. 489 So.2d 160, 168 (Fl. Ct. App. 1986). In *Buonauro*, the court found that "[w]hen specific bills and coins are identifiable because of serial numbers or special markings, or because they are located uncommingled at a specific exclusive place or contained within a identifiable container, the bills and coins, so identifiable, can be replevied." *Id.* at 164.

We conclude neither the Iowa Code nor our case law requires such a narrow view of the specific identifiability of money. *See, e.g.*, *Eaton*, 208 N.W. 2d at 511 ("Replevin for a bank account is somewhat novel, though such cases have not been altogether unknown to the trial courts."). We decline to use

13

and are not bound by the Florida authority and so, decline to allow it to guide our analysis in this case.

Here, the money at issue was an earnest-money payment deposited into a broker's trust account. The trust account is regulated by Iowa law. Iowa Code section 543B.46 requires the broker to deposit earnest-money payments into a federally insured bank and report the name of the bank to the real estate commission. *Id.* § 543B.46(1), (2). The broker is also subject to auditing requirements from the commission. *Id.* § 543B.46(3), (7). Only real estate transaction funds may be deposited into this trust account and the broker

> shall not commingle the broker's personal funds or other funds in the trust account with the exception that a broker may deposit and keep a sum not to exceed one thousand dollars in the account from the broker's personal funds, which sum shall be specifically identified and deposited to cover bank service charges relating to the trust account.

*Id.* § 543.46(4).

The real estate commission has also promulgated rules governing trust accounts. These rules prohibit trust funds from being "invested in any type of fixed-term maturity account, security or certificate without the written consent of the party or parties to whom the money belongs." Iowa Admin. Code r. 193E—13.1. The rules require brokers to maintain their trust account with "[a] record called a journal" which "includes the date, name of depositor, the check number and the amount deposited, and the name of principal or identify the property." *Id.* at r. 193E—13.1(6)(a)(1). This journal is intended to permit the broker to perform a monthly reconciliation of the account. Importantly, the rules also require that

> [r]eal estate sales transactions additionally need an individual ledger account identified by the property or the principal, which records all

receipts and disbursements of the transaction and clearly separates the transaction from all others. The individual ledger account includes the date, check number, amount, name of payee or depositor or explanation of activity with a running balance.

*Id.* r. 193E—13.1(6)(b).

Rosteck submitted the earnest-money payment to Keller Williams's trust account using TrustFunds, which recorded who submitted the money, the date and time, the amount of money submitted, the invoice number, and the listing broker. During these proceedings, Keller Williams identified Rosteck's earnest-money payment and paid it over to Rosteck, after which she posted a bond. At trial, when asked about the trust account, Kyra Bell, Keller Williams's operating principal and primary owner, testified as follows:

> Q. Based on the language that I read to you, is Keller Williams at all times able to identify the escrow funds that it is holding for any individual person who supplied those funds? A. Yes.

> Q. And let me ask that same question specific to Amy Rosteck. At all times was Keller Williams able to identify the earnest money that had been deposited by Amy Rosteck? A. Yes.

> Q. Okay. The information that's identified—where it identifies the buyer, the payer name and the amount of earnest money, and the date when the earnest money was transferred to Keller Williams trust account, that's all information that Keller Williams would have had as well, even if in a different program. Am I correct about that? A. Yes.

> Q. And Keller Williams maintains an earnest money trust account that records the deposit and withdrawal from that trust account on a general ledger of each amount of money going in and out of that trust account, correct? A. Correct.

> Q. Along with that there is a subsidiary ledger that deals with each transaction that records the receipt of an earnest money deposit from a buyer and the disbursement of that money to a closing agent, the—if there's a bond transaction or whatever, but it shows where that money goes; is that correct? A. Correct.

15

Q. And at all times Keller Williams also makes sure that there is an accurate accounting of the balance in the trust account that reconciles with the general ledger and the subsidiary ledger with regard to anybody's money, correct? A. Correct.

We find no error of law regarding the specific identifiability of the earnest money in this case. Money may properly be the subject of a replevin action when it is specifically identifiable. The earnest-money payment in this case was submitted electronically through a specific program that tracked details about the payment. The money was held in Keller Wiliams's trust account. The trust account was maintained in accordance with Iowa law, which requires certain accounting procedures. According to Bell's testimony, Keller Williams was able to identify Rosteck's payment at all times. We conclude that the earnest-money payment in this case, held in trust, was specifically identifiable and therefore is a proper subject of a replevin action. We make no conclusions regarding the applicability of this case to other situations involving non-trust account deposits.

**B. Jury Instructions.** Davisson argues the district court erred by giving instruction 9 and by failing to give his proposed instruction 22B, both of which related to the specific identifiability of property. We disagree.

Instruction 9, given at trial, provided: "In a replevin action, property must be capable of identification to be recovered. Property can only be recovered in a replevin action if it is so marked or labeled as to be capable of identification and must be specifically identifiable."

Davisson argues that the court should have given his proposed instruction number 22B instead, which provided:

Money is generally not the subject of an action of replevin. Money can only be recovered in a replevin action if it is so marked or labeled as to be capable of identification, and must be specifically-identifiable money.

16

> Money is not the subject of an action of replevin unless it is marked or designated in some manner so as to become specific as regards the power of identification, such as being in a bag or package. Once money is deposited in a bank account, it is not specifically identifiable because those specific funds are not held indefinitely by the bank and are actually used by the bank to invest or loan to other customers. Furthermore, a bank customer does not have the immediate right to possess any funds deposited into a bank because certain procedures, events, and contingencies exist in order to gain possession of the funds.

> If Rosteck cannot prove the funds in the account are specifically identifiable, or Rosteck had an "immediate" right of possession, you must find for Davisson.

We conclude jury instruction 9 accurately stated the law regarding specific identifiability of property. *See Le v. Vaknin*, 722 N.W.2d 412, 414 (Iowa 2006) (providing that jury instructions must be "a correct statement of the applicable law based on the evidence presented"). Instruction 9 permitted the jury to weigh the evidence presented and decide whether the earnest money was specifically identifiable. Conversely, Davisson's proposed instruction provided extraneous information and argument that was not pertinent to the specific identifiability of property. Davisson was not prejudiced by the giving of instruction 9. *See Wells v. Enter. Rent-A-Car Midwest*, 690 N.W.2d 33, 36 (concluding that giving or refusing to give an instruction does not warrant reversal unless the party complaining was prejudiced). We conclude the court did not abuse its discretion in giving instruction 9 and refusing to give Davisson's proposed instruction 22B.

**C. Contract Termination.** Davisson argues that Rosteck did not comply with the contract by giving the required seven-day notice of contract cancellation to entitle her to the return of her earnest-money payment. We find that Rosteck's notice was sufficient.

17

Nothing in the agreement required Rosteck to provide a specific form of notice to Davisson. *See Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa 2008) (discussing contract interpretation). The agreement also did not require Rosteck to specifically state that she was providing seven-day notice. Davisson does not explain why the form Rosteck sent was insufficient under either the automatic or seven-day-notice cancellation provisions in the agreement. Davisson likewise does not explain why the form Rosteck sent could not qualify as the beginning of a seven-day notice period. Davisson did not provide marketable title within seven days of Rosteck sending the form. On top of that, as Rosteck argued, the contract also was terminated based on material defects including Davisson's false statements on the disclosure statement and the failure to maintain the real estate, which did not require a seven-day notice. We conclude that the contract was properly rescinded under its terms.

**D. Attorney Fees and Costs.** Finally, Davisson claims that the district court erred in awarding Rosteck attorney fees and costs. Davisson argues that the award should be set aside if we vacate the jury verdict and the trial court should have deferred ruling on Rosteck's application until after the resolution of the earlier appeal. Alternatively, Davisson argues that if we uphold the jury verdict, the district court abused its discretion in the amount of fees and costs awarded.

This opinion makes the first two issues Davisson raises moot. We will consider his final argument, the reasonableness of the fees and costs awarded.

Davisson's objections to the fees and costs awarded relate to the expert witness fees, which he claims should have been limited to $150 per day based on Iowa Code section 622.72, and the deposition fees, which Davisson argues were excessive and duplicative. Davisson does not specifically raise a

18

complaint about the amount of the attorney fees awarded. He does, however, appear to argue that this court should take a de novo approach to reviewing the fees. We will consider Davisson's arguments in turn.

1. *Expert witness fees.* Davisson argues that Rosteck's expert witnesses were only entitled to $150 per day for their work in this case. Davisson bases this argument on Iowa Code section 622. 72, which discusses expert witness fees taxed as costs at trial. We conclude the district court did not abuse its discretion in awarding the expert fees in this case.

Iowa Code section 622.72 provides that expert witnesses can receive up to $150 per day for their testimony at trial. For that reason, Davisson alleges Rosteck was only entitled to an award of $150 per day for her experts and the court abused its discretion by awarding more.

"A written contract must contain an express provision regarding attorney fees and litigation expenses in order for a court to include attorney fees and litigation expenses in a favorable judgment." *NevadaCare, Inc.*, 783 N.W.2d at 470. Rosteck was entitled to an award of attorney fees and costs by the plain language of the agreement. Those costs reasonably include costs of her expert witnesses. The contract did not limit "costs" only to what is available under Iowa Code section 622.72. We conclude the district court did not abuse its discretion in awarding Rosteck the costs of her experts beyond the statutory fees in Iowa Code sections 622.69 and .72.[1]

2. *Deposition fees.* Rosteck requested deposition fees for the depositions of Rosteck (taken at Davisson's request), Bell, Willems, and

---

[1] Under Iowa Code section 622.69, "[w]itnesses shall receive ten dollars for each full day's attendance, and five dollars for each attendance less than a full day, and mileage expenses."

Carrie Kasper. The court determined these expenses were necessary and reasonable.

Davisson alleges the deposition fees awarded were excessive and duplicative. Davisson also alleges that the district court should have analyzed the costs in accordance with Iowa Rule of Civil Procedure 1.716, which provides,

> Costs of taking and proceeding to procure a deposition shall be paid by the party taking it who cannot use it in evidence until such costs are paid. The judgment shall award against the losing party only such portion of these costs as were necessarily incurred for testimony offered and admitted upon the trial.

Iowa R. Civ. P. 1.716.

Because the agreement required Davisson to pay Rosteck's costs, we conclude those costs include reasonable deposition expenses without regard to Iowa Rule of Civil Procedure 1.716. *See NevadaCare, Inc.*, 783 N.W.2d at 470. Rosteck sought reimbursement for the depositions that were a necessary part of this litigation. Davisson alleges, without more, that the fees requested were excessive and duplicative. On our review of the record, we disagree. The district court properly excluded any duplicative charges and awarded Rosteck expenses for depositions. We conclude the district court did not abuse its discretion in awarding Rosteck deposition fees.

3. *Attorney fees.* Because Davisson raises no specific challenge to the attorney fees awarded, other than the fees were too much, we need only conclude whether the district court abused its discretion in awarding attorney fees. We find no abuse of discretion here.

"Generally, attorney fees are recoverable only by statute or under a contract." *Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006) (citation

omitted). "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as part of the costs a reasonable attorney fee to be determined by the court." Iowa Code § 625.22(1). A court may only include attorney fees and litigation expenses in a favorable judgment when an express provision regarding attorney fees and litigation expenses is included in the written contract. *NevadaCare, Inc.*, 783 N.W.2d at 470. "When a contract contains a clear and express provision regarding attorney fees, the court's award must be for reasonable attorney fees." *Id.* "A reasonable attorney fee is not limited to the hourly fee charged by lawyers. The concept includes certain litigation expenses, including the cost of paralegals." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 732–33 (Iowa 2005).

"The district court is considered an expert in what constitutes a reasonable attorney fee, and we afford it wide discretion in making its decision." *Id.* at 733. "The burden is on the party seeking to recover fees to prove both that the services were reasonably necessary and that the charges were reasonable in amount." *Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C.*, 728 N.W.2d 832, 842 (Iowa 2007) (cleaned up). The district court considers the following factors when determining a reasonable attorney fee award:

> the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar service. The district court must look at the whole picture and, using independent judgment with the benefit of hindsight, decide on a total fee appropriate for handling the complete case

*Id.* (citation omitted).

In a detailed, seventeen-page ruling, the district court carefully walked through Rosteck's request for attorney fees. The district court considered the factors set forth in *Ales*, reviewed the invoices submitted, and considered the parties' arguments. After reviewing all of the available information, the court determined the requested fees were reasonable. On this record, we find no abuse of discretion in the district court's award of attorney fees.

**E.  Appellate Attorney Fees and Costs.** After oral argument, Rosteck filed an appellate attorney fee and cost affidavit requesting $19,982 in attorney fees and $3,460.58 in additional costs and charges. Davisson did not file a response to Rosteck's appellate fee request. Rosteck requested appellate attorney fees at the conclusion of her appellate brief but did not specifically cite any authority. However, we consider the arguments made by each party related to the entitlement to trial fees and costs in this matter under the terms of the agreement. Based upon our reasoning in Part III.D, above, we find Rosteck is entitled to appellate fees and costs of $20,000, and we order Davisson to pay fees and costs in that amount.

## IV. Conclusion.

Because Rosteck's earnest-money payment could properly be the subject of a replevin action, the district court did not err in instructing the jury, Rosteck properly canceled the contract, and the district court did not err in its award of attorney fees and costs, we affirm. Consistent with this opinion, we order Davisson to pay Rosteck $20,000 in appellate fees and costs.

**AFFIRMED.**